**HIRAM WALKER & SONS, Limited, v. LAWSON, Collector of Customs, et al.**

(District Court, E. D. Michigan, S. D. August 23, 1921.)

No. 411.

1. **Statutes ☞158—Repeals by implication not favored.**
    Repeals by implication are not favored, and a later statute will not be held to have impliedly repealed an earlier one, unless full effect cannot be reasonably given to both.

2. **Treaties ☞11—Not abrogated by statute by implication.**
    A treaty between the United States and a foreign country will not be regarded as abrogated, and rights created thereby taken away, by a subsequent statute by implication, unless an intention to that effect is clearly and unequivocally indicated by the necessary operation of such statute.

3. **Treaties ☞11—Foreign shipments in bond through United States lawful.**
    The provision of the treaty of July 4, 1871 (17 Stat. 863), between Great Britain and the United States, giving the right to transport merchandise in bond through the United States to or from British possessions, remains in force and was not abrogated by the National Prohibition Act as to intoxicating liquors, nor does such act by implication repeal Rev. St. § 3005 (Comp. St. § 5690), authorizing transportation in bond through the United States of merchandise in transit between foreign countries, and the shipment of whisky in bond through the United States from Canada to Mexico is lawful, and within the rights of the shipper under the treaty and statute.

In Equity. Suit by Hiram Walker & Sons, Limited, against Richard I. Lawson, Collector of Customs, and John A. Grogan, Collector of Internal Revenue. Decree for complainant.

Lucking, Helfman, Lucking & Hanlon, of Detroit, Mich., for plaintiff.

John E. Kinnane, U. S. Dist. Atty., and Fred L. Eaton, Asst. Dist. Atty., both of Detroit, Mich., for defendants.

TUTTLE, District Judge. This is a bill for an injunction to restrain the defendants, one of whom is the United States collector of customs, and the other the collector of United States internal revenue, for this district, from interfering with shipments, by the plaintiff, of intoxicating liquor from Canada to Mexico and other foreign countries, through the United States. The question involved is whether such shipments are unlawful under the National Prohibition Act. The material facts alleged in the bill of complaint are as follows:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Plaintiff is a corporation organized and doing business under the laws of the province of Ontario, Canada, is a resident of Walkerville, in said province, and is a subject of Great Britain. For more than 30 years it has been manufacturing and distilling, in Walkerville, whisky which it has been selling and shipping to various foreign countries. During these years plaintiff has conveyed its whisky from Walkerville to a port of the United States, and in transit therefrom through the United States to other foreign countries, as authorized by a certain treaty between the United States and Great Britain, and pursuant to a certain statute of the United States. The treaty in question was proclaimed July 4, 1871 (17 Stat. 872), and contains the following provision:

"It is agreed that, for the term of years mentioned in article XXXIII of this treaty, goods, wares, or merchandise arriving at the ports of New York, Boston, and Portland, and any other ports in the United States which have been or may, from time to time, be specially designated by the President of the United States and destined for her Britannic Majesty's possessions in North America, may be entered at the proper custom house and conveyed in transit, without the payment of duties, through the territory of the United States, under such rules, regulations, and conditions for the protection of the revenue, as the government of the United States may from time to time prescribe; and under like rules, regulations, and conditions, goods, wares, or merchandise may be conveyed in transit, without the payment of duties, from such possessions through the territory of the United States for export from the said ports of the United States."

The statute referred to is section 3005 of the United States Revised Statutes (Comp. St. § 5690), which provides as follows:

"All merchandise arriving at any port of the United States destined for any foreign country, may be entered at the custom house, and conveyed, in transit, through the territory of the United States, without the payment of duties, under such regulations as to examination and transportation as the Secretary of the Treasury may prescribe."

After the time of the taking effect of the Eighteenth Amendment and of the National Prohibition Act (41 Stat. 305), plaintiff ceased to import whisky into the United States, but has continued, under the regulations of the United States Treasury Department, to convey whisky in transit, in bond, through the United States, pursuant to said treaty and statutes; such whisky entering the United States from Canada and being destined for foreign countries. If plaintiff were compelled to ship its whisky to Mexico, Central America, and South America otherwise than in bond, through the United States, the increase in freight and transportation charges, cost of handling, and delays caused in making deliveries would be so great as to largely impair, if not entirely destroy, the business of the plaintiff in such foreign countries. Shortly before the filing of its bill of complaint herein, plaintiff presented a shipment of its whisky to the agent of the defendant collector of customs at the port of Detroit in this district, to be conveyed, in transit, in bond, through the United States to the country of Mexico, to be there delivered to plaintiff's customers residing in said country. It duly complied with all applicable laws (except the National Prohibition Act, if that be applicable) and regulations.

Up to this time, neither defendant had interfered with any such shipment. Plaintiff executed its bond in due form, and its said shipment was delivered to a common carrier in Detroit for conveyance in transit, in bond, through the United States to Mexico. Shortly thereafter, the defendant collector, claiming to act pursuant to the provisions of the National Prohibition Act, seized said shipment while it was still in the possession of said common carrier for said through shipment, and refused to allow it to proceed, on the ground that it was being transported contrary to the terms of the Eighteenth Amendment and of the National Prohibition Act. Plaintiff is unable to obtain a permit for said, or any similar, shipment of intoxicating liquors in bond from Canada through the United States to a foreign country and the defendants will interfere with, and prevent, any such shipment unless restrained by injunction.

By appropriate averments, the bill alleges that irreparable injury will be sustained by it, unless the injunction prayed be granted. The bill alleges that the suit arises under the Constitution and laws and treaties of the United States, and that the matter in controversy exceeds the jurisdictional sum of $3,000, exclusive of interest and costs. The cause is now before the court on the bill, a motion to dismiss, an answer not denying the foregoing facts, and a stipulation that—

"as the issues presented by the bill of complaint and answer filed thereto are questions of law and the facts are before the court as set forth in the bill of complaint, answer, and this stipulation, it is unnecessary to take proofs in said cause, the aforesaid questions of law being controlling and decisive, that the case proceed to a final decree without taking of proofs, and that the taking of proofs herein be dispensed with, and that the whisky in controversy was and is intended for consumption as beverage whisky, but the plaintiff does not admit the materiality of the manner of the use thereof."

As already indicated, the ultimate question presented for decision is whether the National Prohibition Act, properly construed, forbids the transportation of intoxicating liquor from Canada to a foreign country by transshipment, in bond, through the United States, under regulations pursuant to the treaty and statute already quoted. The solution of this question involves, and depends upon, the proper interpretation of said National Prohibition Act, popularly known as the "Volstead Act." This statute was, of course, passed for the purpose of enforcing the Eighteenth Amendment, which provides as follows:

"After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States and all territories subject to the jurisdiction thereof, for beverage purposes, is hereby prohibited."

Section 3 of title 2 of the statute contains the following provision:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

Does this section of the statute forbid the making of the transshipment in question? It is clear enough, and is, I understand, conceded by plaintiff, that under a strict construction of the language just quoted from such statute the latter is sufficiently broad in its terms to prohibit the shipments under consideration, since it is undoubtedly necessary, in order to make such shipments, to both "possess" and "transport" intoxicating liquor within the United States. It is likewise probably true, as is apparently also conceded, that this statute, even thus strictly construed, would be a valid exercise of the power, expressly conferred on Congress by the Eighteenth Amendment, to enforce such amendment by "appropriate legislation." It is, however, equally certain that in attempting to interpret the meaning of this statute the words used must be read in the light of the mischief aimed at, and of the purpose sought to be accomplished by its enactment.

The primary factor in determining the proper construction of such statute must be a consideration of the design and intention of Congress in enacting it, and if such intention can be ascertained, that, and not the literal import of the language employed, must control. It must be borne in mind that not only may the same words have different meanings in different connections, but also that—

"A thing may be within the letter of a statute, and yet not within the statute, because not within its spirit, nor within the intention of its makers." Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Lau v. United States, 144 U. S. 47, 12 Sup. Ct. 517, 36 L. Ed. 340; Taylor v. United States, 207 U. S. 120, 28 Sup. Ct. 53, 52 L. Ed. 130; American Security & Trust Co. v. District of Columbia, 224 U. S. 491, 32 Sup. Ct. 553, 56 L. Ed. 856; Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 7, 10 A. L. R. 1548.

It will be noted that the language of the Eighteenth Amendment, already quoted, applies and limits the prohibitory terms thereof to intoxicating liquors intended for "beverage purposes," and that Congress, by section 3 of title 2 of the Volstead Act, expressed its intention that such act should be construed "to the end that the use of intoxicating liquor as a beverage may be prevented." In view of these references to the object of this legislation, and of the common knowledge of the territorial limitations upon the scope and effect of Congressional action, it cannot be doubted that the purpose underlying the enactment of this statute was the prevention of the use of intoxicating liquor as a beverage within the United States and the territory subject to the jurisdiction thereof. Street v. Lincoln Safe Deposit Company, supra. This purpose, then, must be carefully kept in mind in seeking to arrive at a correct interpretation of the language employed.

[1] It is another established and recognized principle of statutory construction that repeals by implication are not favored, and that a later statute will not be held to have impliedly repealed an earlier one, unless full effect cannot be reasonably given to both. United States v. Lee Yen Tai, 185 U. S. 213, 22 Sup. Ct. 629, 46 L. Ed. 878; Ex parte Webb, 225 U. S. 663, 32 Sup. Ct. 769, 56 L. Ed. 1248; Washington v. Miller, 235 U. S. 422, 35 Sup. Ct. 119, 59 L. Ed. 295.

**[2, 3]** It is equally well settled that a treaty between the United States and a foreign country will not be regarded as abrogated, and rights created thereby taken away, by a subsequent statute, by implication, unless an intention to that effect is clearly and unequivocally indicated by the necessary operation of such statute, it being presumed, until the contrary is plainly manifest, that Congress intends no interference with such treaty rights; and it is only where the provisions of a treaty and the terms of a later statute are in irreconcilable conflict, and cannot both remain in force, that the former will be considered as impliedly repealed by the latter. Chew Heong v. United States, 112 U. S. 536, 5 Sup. Ct. 255, 28 L. Ed. 770; Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614; U. S. v. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544.

It is necessary to consider a contention presented, but apparently not very earnestly pressed, by the government, that the provision of the treaty here involved, article 29, ceased to be operative prior to the passage of the National Prohibition Act. As already noted in the extract therefrom previously quoted, the said article was, by its terms, to remain in force "for the term of years mentioned in article 33 of this treaty." Article 33 does not mention article 29, but provides that certain other specified articles of the treaty, relating to fisheries—

"shall remain in force for the period of ten years from the date at which they may come into operation, and, further, until the expiration of two years after either of the high contracting parties shall have given notice to the other of its wish to terminate the same."

It is argued in this connection that, as these articles specified in article 33 have been long since abrogated, in accordance with the provisions of the treaty, therefore the "term of years mentioned in article 33," during which article 29 was to continue in force, has terminated. With this contention I cannot agree. I am satisfied that the reference in article 29 to article 33 was prompted by a desire to adopt, for article 29, the same period of life as that "mentioned in article 33," without an unnecessary repetition, in article 29, of the somewhat cumbrous provisions of article 33. When the articles thus specified in article 33 were subsequently terminated, no mention was made of article 29. The latter has never been expressly abrogated, has been treated as in force, and acted upon, by the executive officials of Canada and of the United States for more than 50 years, and is, in my opinion, still in effect.

Bearing in mind, then, the canons of construction referred to, and applicable to an inquiry into the meaning and effect of the National Prohibition Act with respect to the matter in controversy, it is to be observed that at the time of the adoption of said act a treaty between this nation and Great Britain was in effect, granting to the subjects of the latter, including the plaintiff herein, the right to convey goods, wares, or merchandise in transit from Canada through the territory of the United States in transit to other countries, subject only to the rules and regulations therein referred to. There was also at that time in force a federal statute; obviously enacted in furtherance of the object of said treaty; such statute providing that—

"All merchandise arriving at any port of the United States destined for any foreign country, may be entered at the custom house, and conveyed, in transit, through the territory of the United States, without the payment of duties, under such regulations as to examination and transportation as the Secretary of the Treasury may prescribe."

Knowing, as it must, of course, he held to have known, of the existence and terms of this treaty and statute, Congress enacted legislation containing prohibitory provisions couched in broad and general terms, but clearly designed to prevent the use of intoxicating liquor for beverage purposes within the United States and the territory subject thereto. Congress, of course, had no right or power to forbid any use or disposition of intoxicating liquor outside of such territory, and there is no reason for the assumption or room for the inference that it entertained any such intention. U. S. v. Palmer, 3 Wheat. 610, 4 L. Ed. 471. What warrant, then, is there for ascribing to Congress a purpose (not expressed by that body, as it would have been easy and, if intended, natural to have done) to prohibit the shipping of liquor not intended for, or capable of, use for beverage or any other purpose in the United States, and transported, not into, but through, the United States (United States v. Gudger, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653; McLean v. Hager [C. C.] 31 Fed. 602), in accordance with a treaty then in existence and not expressly abrogated or otherwise mentioned in the statute which is claimed to have indicated such a purpose? I am unable to find in the language of the statute, read and considered in the light of all the surrounding circumstances, the clear evidence of such a purpose which should appear in order to justify such a construction. I am of the opinion that the National Prohibition Act does not indicate any intention to forbid the conveyance of intoxicating liquors in transit in bond from Canada through the United States to foreign countries under the provisions of the treaty and statute authorizing such conveyance, and pursuant to proper rules and regulations by the executive officials having charge thereof.

It is urged by the government that the prohibition in the statute against the exportation of intoxicating liquor from the United States negatives an intention to confine its application to the use of such liquor within the United States. This argument overlooks the close relation between manufacture and exportation, and the incentive to engage in the former which is furnished by the right to engage in the latter; and it was doubtless considered, and not without reason, that to forbid the exportation of intoxicating liquor from, would tend to make easier the enforcement of the prohibition against its manufacture and possession in, the United States. It cannot, however, be said that such a relation exists between the transshipments in question and the prevention of the use of intoxicating liquor as a beverage within the United States. To hold otherwise would be in effect to ignore the efficacy and effect of the protection afforded such transshipments by the United States customs officers and other officials under whose supervision they are conveyed in transit through the United States.

It was evidently the belief of Congress in providing for such conveyance, that goods under such supervision could be safely left to

proceed without interruption through this country to their destination beyond its borders, and that they could therefore be legitimately exempted from the payment of the customs charges to which they would otherwise be subject. In view of the presumption in favor of the performance by public officers of the duties imposed upon them, and giving to the operation of the customs rules and regulations the same consideration and weight apparently accorded by Congress, I conclude that conveyances of intoxicating liquor in transit under the rules and regulations applicable and in the control of the proper officials were not regarded by Congress as falling within the scope of the evils sought to be remedied by the National Prohibition Act, or as having such a substantial relation thereto as to call for their inclusion among the acts forbidden by that statute.

Finally, it is argued that, because section 20 of title 3 of the statute, applicable solely to the Canal Zone, expressly provides "that this section shall not apply to liquor in transit through the Panama Canal or on the Panama Railroad," therefore the absence of such an express provision from the portions of the statute not relating to the Canal Zone indicates a purpose to make those portions of the act applicable to liquor in transit. This contention cannot be sustained. Its lack of merit is made apparent, not only by the observation that it is merely from the operation of "this section" that the liquor in transit referred to is exempted, but also by a consideration of the fact that the absence of any applicable treaty furnishes a probable, if not necessary, reason for an express exemption from the operation of section 20 of "in transit" shipments of liquor through the Canal Zone, whereas there was no necessity or occasion for such an express exemption with respect to "in transit" conveyances from Canada through the United States; the latter being protected by treaty provisions not repealed by the National Prohibition Act.

The arguments advanced by the government rest, in the last analysis, upon the ultimate contention that to "transport" or "possess" intoxicating liquor, except as expressly authorized by the Volstead Act, is forbidden by that act. It has, however, already been distinctly held by the Supreme Court that these words are not to be so interpreted but that a transportation, or possession, of intoxicating liquor necessarily connected with, and incidental to, an act not within the prohibitions, because not within the spirit and true meaning of the statute, is not a vioaltion thereof. Street v. Lincoln Safe Deposit Company, supra.

For the reasons and from the conclusions thus expressed, it necessarily results that the injunction prayed should be granted, and an order will be entered in conformity with the terms of this opinion.