BLAIR, Commissioner of Internal Revenue, et al. v. STEWART DISTILLING CO.

(Court of Appeals of District of Columbia. Submitted April 8, 1926. Decided May 3, 1926.)

No. 4399.

1. Intoxicating liquors ⟖112½.

National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) forbids exportation of beverage liquor.

2. Intoxicating liquors ⟖69—Commissioner of Internal Revenue exercises judicial discretion in passing on evidence in support of application for permit to export nonbeverage liquor (National Prohibition Act, tit. 2, §§ 3, 5, 6 [Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½bb, 10138½c]).

Under National Prohibition Act, tit. 2, §§ 3, 5, 6 (Comp. St. Ann. Supp. 1923, §§ 10138½aa, 10138½bb, 10138½c), and Regulations, § 1603, Commissioner of Internal Revenue exercises a judicial discretion in passing on evidence in support of application for permit to export nonbeverage liquor.

3. Intoxicating liquors ⟖72.

Decision of Commissioner of Internal Revenue on application for permit to export nonbeverage liquor ought not be disturbed, except for an abuse of discretion.

4. Intoxicating liquors ⟖69—Commissioner's denial in part of application for permit to export nonbeverage liquor held not abuse of discretion.

Partial denial by Commissioner of Internal Revenue of application for permit to export nonbeverage liquor held not abuse of discretion, in view of evidence of use intended and guaranties against other uses.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Stewart Distilling Company against David H. Blair, Commissioner of Internal Revenue, and another. From a decree for plaintiff, defendants appeal. Reversed and remanded.

H. W. Orcutt and Peyton Gordon, both of Washington, D. C., for appellants.

J. C. Hayes and E. S. Bailey, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia, directing the defendants, appellants here, to grant and issue to the plaintiff, appellee here, a permit to export to John Morgan Richards & Sons, Limited, London, England, 750 full barrels of whisky. The cause was heard on a motion to strike out the answer of the defendants and for a decree pro confesso. The motion to strike was granted, and defendants elected to stand upon their answer as filed.

In its bill appellee alleged that it is the holder of a basic permit authorizing the exportation of whisky for nonbeverage purposes, and that on December 31, 1923, it filed with the agents of the appellants, in accordance with the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) and regulations thereunder, an application for a specific permit to export to John Morgan Richards & Sons, Limited, London, England, 750 barrels of whisky for nonbeverage purposes to carry out a contract entered into with that firm. Attached to the bill as an exhibit was an affidavit of the London firm which disclosed that it is an old, established house, having been founded in 1876; that it is operating in an extensive way as a patent medicine vender and dealer, drug merchant, herbalist, importer, and exporter, etc. The affidavit further states that the whisky ordered from the appellee "will be used by us (Richards & Sons) in the factory for pharmaceutical manufacturing purposes, and in the event of the whisky not being so utilized it will be sold for pharmaceutical, manufacturing, and nonbeverage purposes exclusively."

The bill alleges strict compliance with the laws and regulations of the department governing applications for such permits, and that "defendants have no discretion vested in it [them] by law, except to judge the facts and evidence in plaintiff's case, and determine whether the law and lawful regulations have been complied with, and have exceeded their power, right, and discretion by refusing to grant plaintiff its legal right, on the ground that there is no evidence before the defendants warranting said adjudication in denying the application aforesaid to the extent of 650 barrels." It may be here noted that the application was for a permit to export 750 barrels of whisky and the decision of the Commissioner allowed the exportation of only 100 barrels.

In the decision of the Prohibition Commissioner, also an exhibit to the bill, that official said: "The proof furnished by the Stewart Distilling Company (appellee) at best shows that John Morgan Richards & Sons, Limited, have no present demand for any quantity of whisky for nonbeverage purposes in excess of the 100 barrels, and there appears to be no sufficient proof of any proposed nonbeverage use by John Morgan Richards & Sons, Limited, for any quantity in excess of these 100 barrels. * * * I am inclined to believe that the import and export commission has been very liberal, in view of the evidence in this case, in authorizing the exportation of the 100 barrels, and I do not see my way clear, upon the present state of the evidence in this case, to authorize the exportation of any whisky under the pending application in excess of these 100 barrels.

The joint answer of the defendants contained a denial of many of the averments of the bill, unnecessary to mention here. It is therein alleged that the Commissioner of Internal Revenue, pursuant to his duty, caused an investigation to be made in England as to the nonbeverage use of the liquor as to which an export permit was sought, and that the American consul at London reported, through the State Department, in part as follows: "The whisky desired is for the manufacture of patent medicine called Soo syrup, which was sold 50 years ago by Demas Barns of New York, and is now being revived and to be sold to the west coast of Africa and regions similar. The medicine is a disguised intoxicant, similar to the American Pain Killer. If this patent medicine is not a commercial success, the whisky will be used in some other pharmaceuticals, including elixir lacto peptine, which is already on the market. The business was established in 1876, and is now of good standing, with a capital of £100,000 sterling, according to Dun's."

Another report by the same consul, also set out in the answer, contained the following: "Large liquor dealers state, as has already been reported, that industrial use of American whisky is impracticable."

Section 3 of title 2 of the National Prohibition Act, 41 Stat. 305, 308 (Comp. St. Ann. Supp. 1923, § 10138½aa), ordains that "no person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, * * * export * * * any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented. Liquor for nonbeverage purposes * * * may be * * * exported, * * * but only as here-

in provided, and the Commissioner may, upon application, issue permits therefor."

Under section 6 of title 2 of the act (Comp. St. Ann. Supp. 1923, § 10138½c) the Commissioner is authorized to prescribe the form of all permits and applications "and the facts to be set forth therein. * * * In the event of the refusal by the Commissioner of any application for a permit, the applicant may have a review of his decision before a court of equity in the manner provided in section 5 hereof."

The material part of section 5 of title 2 (section 10138½bb) is as follows: "The manufacturer may by appropriate proceeding in a court of equity have the action of the Commissioner reviewed, and the court may affirm, modify, or reverse the finding of the Commissioner as the facts and law of the case may warrant. * * *"

Conformably to the provisions of the act, the Commissioner promulgated regulations, the validity of which is not challenged. Section 1603 of those Regulations reads in part as follows: "In order that a permit allowing the exportation may be granted, such evidence must show clearly and definitely the purpose or purposes for which the liquor proposed to be exported is to be used, together with the specific nonbeverage need or demand on which such purposes are based. * * * In addition to such proof of purpose, the evidence obtained by the exporter shall include sworn evidence showing the nature of the business of the foreign consignee and purchaser. * * * Such evidence shall, in all cases, include the affidavit of the consignee and purchaser as to the purpose for which the liquor is to be used, the specific need or demand therefor in the foreign country, and the specific use or uses to which it is to be put, in addition to other evidence necessary for the purpose of showing the nonbeverage purpose of the exportation."

[1, 2] The National Prohibition Act, not only forbade the use of intoxicating liquor for beverage purposes in the United States, but prohibited its exportation for such use. Grogan v. Walker & Sons, 259 U. S. 80, 89, 42 S. Ct. 423, 66 L. Ed. 836, 22 A. L. R. 1116. To avail itself of the privilege of exportation, an applicant for a permit must establish by competent and satisfactory evidence that the liquor to be exported will be used exclusively for nonbeverage purposes. The Commissioner of Internal Revenue is the official primarily charged with the duty and responsibility of passing upon evidence offered in support of an application for such a permit.

That he is clothed with a sound judicial discretion in the performance of his duty is apparent, we think, from the provisions of the statute. Indeed, that statute in express terms declares that all its provisions "shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

[3, 4] It follows, from what we have said as to the primary duty and responsibility of the Commissioner, that the hearing on appeal must be confined to a review of the evidence before him, as otherwise the court and not the Commissioner would be exercising a discretion conferred by statute upon the latter. While the court is clothed with jurisdiction to "affirm, modify, or reverse the finding of the Commissioner as the facts and law of the case may warrant," it is not authorized, in our view, to overturn the decision of the Commissioner, if that decision is based upon evidence of the character already mentioned. In other words, unless the court, upon a review of the evidence before the Commissioner, is satisfied that in reaching his decision he did not exercise a sound judicial discretion, but, on the contrary, that such decision was plainly inconsistent with the evidence before him, the finding of the Commissioner ought not to be disturbed. See Ma-King Products Co. v. Blair (C. C. A.) 3 F.(2d) 936; Shreveport Drug Co. v. Jackson (D. C.) 2 F.(2d) 64; Schnitzler v. Yellowley (D. C.) 290 F. 849. But see, also, McGill v. Mellon (D. C.) 5 F.(2d) 262.

In the present case, the Commissioner had before him the statement of the American consul at London that the patent medicine called Soo syrup, for the manufacture of which the whisky was to be applied, is a "disguised intoxicant," to be sold "on the west coast of Africa and regions similar," and that "industrial use of American whisky is impracticable" in England. The affidavit of the London firm states that, in the event all the whisky is not utilized in its factory, it will be sold "for pharmaceutical manufacturing and nonbeverage purposes exclusively." When it is considered that the only assurance the Commissioner has that the exported liquor will be devoted to nonbeverage uses is the good faith of the person or firm to whom it is consigned abroad, the inadequacy of the statement of the London firm is apparent. That firm would be under a moral obligation to restrict its use of the liquor to nonbeverage purposes, for it so pledged itself under oath. The purchasers of liquor from it, however, would be under no such pledge; hence

the purpose of restricting the use of exported liquor to the firm or individual to whom consigned.

In view of these considerations, and the evidence furnished by the American consul, we are clearly of the view that the Commissioner exercised a sound discretion in the premises, and that his decision should not be disturbed. It results that the decree must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.