## LAMBERT v. YELLOWLEY et al.

(Circuit Court of Appeals, Second Circuit. December 19, 1924.)

No. 7.

1. **Courts** ⊚═37(1)—**Defendants, by moving to dismiss complaint, admitted allegation that amount in controversy exceeded $3,000.**

Defendants, by moving to dismiss complaint, admitted allegation of complaint that amount in controversy exceeded $3,000, exclusive of interest and costs, and were in no position to raise question of trial court's jurisdiction on that ground.

2. **Courts** ⊚═328(3)—**Amount in controversy is value of business to be protected by injunction and property rights sought to be enforced.**

In suit to enjoin interference with plaintiff's business, amount in controversy is value of business to be protected and rights of property sought to be enforced, and not merely damages which accrued prior to commencement of action.

3. **Constitutional law** ⊚═48—**Statutes held valid, unless Congress has indubitably exceeded its constitutional powers.**

Statutes must be held valid, unless it clearly and indubitably appears that Congress has exceeded its constitutional powers.

4. **Constitutional law** ⊚═27—**Powers of Congress embrace those expressly granted by Constitution and such as may be implied therefrom.**

Powers of Congress embrace those expressly granted by Constitution and such as may be implied therefrom.

5. **Constitutional law** ⊚═83(1), 87—**Intoxicating liquors** ⊚═17 — **Statute limiting use of spirituous liquor for medicinal purposes held valid, and not violative of constitutional guaranties of life, liberty, and property.**

National Prohibition Act. tit. 2, § 7 (Comp. St. Ann. Supp. 1923, § 10138½cc), and Act Nov. 23. 1921, § 2 (Comp. St. Ann. Supp. 1923, § 10138½ccc), in so far as they prohibit physicians from prescribing more than a pint of spirituous or vinous liquor in 10 days, *held* valid. under Const., Amend. 18, and not violative of constitutional guaranties of life, liberty, and property.

6. **Intoxicating liquors** ⊚═2½, New, vol. 8A Key-No. Series, 6—**State or United States may take away right to drink liquors containing alcohol insufficient to intoxicate.**

State or United States may take away right to drink liquors which are intoxicating, and to do so effectively may take away right to drink certain liquors containing alcohol insufficient to intoxicate.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Samuel W. Lambert against Edward C. Yellowley, as acting Prohibition

Director, and others. From a decree (291 F. 640) granting plaintiff's motion for an injunction pendente lite, defendants appeal. Reversed, with directions.

William Hayward, U. S. Atty., of New York City (John Holley Clark, Jr., of New York City, of counsel), for appellants.

Davies, Auerbach & Cornell, of New York City (Joseph S. Auerbach, Martin A. Schenck, and Emily C. Holt, all of New York City, of counsel), for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. The complainant is a physician engaged in the practice of medicine in the city of New York. It is conceded that he is a man of great distinction in his profession and of wide and unusual experience in the practice of medicine. He filed a bill of complaint in the court below, in which he asked that provisions in the National Prohibition Act, commonly known as the Volstead Act, being the Act of October 28, 1919 (41 Stat. 305, c. 85 [Comp. St. Ann. Supp. 1923, § 10138¼ et seq.]), as well as of the act supplemental to the National Prohibition Act, being the Act of November 23, 1921, c. 134 (42 Stat. 222), also known as the Willis-Campbell Act, should be declared unconstitutional, and that an injunction be issued restraining the defendants from interfering with the complainant in his acts as a physician in prescribing vinous or spirituous liquors to his patients for medicinal purposes, upon the ground that the quantities prescribed for the use of any one person in any period of ten days exceeded the limits fixed by the said acts, or either of them. The bill contained the following allegations:

"Sixth—It is an essential part of complainant's right as a physician and of his duty toward his patients to treat their diseases and promote their physical well-being according to the untrammeled exercise of his best skill and scientifically trained judgment, and, to that end, to advise the use of such medicines and medical treatment as in his opinion are best calculated to effect their cure and establish their health. By practicing medicine, the complainant is authorized to and does hold himself out to the world as willing to place at the service of patients such skill and judgment as are above described, to the full extent of his ability.

"Seventh—According to the usage and practice of the medical profession, long established and generally accepted, physicians, in advising the use of drugs and medicines, do so by written statements containing explicit directions as to the time and manner of administration and as to the quantities to be used. Such written statements and directions are called prescriptions. In issuing a prescription the physician assumes no responsibility and exercises no control in respect to procuring the drugs or medicines prescribed, but merely expresses his judgment as to what the needs of the patient require for the restoration of health.

"Eighth—It is the belief and judgment of the complainant based upon his experience and observation and the study of medical science, that the use as medicine of spirituous liquors to be taken internally is, in certain cases, necessary for the proper treatment of patients in order to afford relief from known ailments. By spirituous liquors, complainant means liquors containing more than one-half of 1 per cent. of alcohol by volume, including brandy, whisky, and wine.

"Ninth—In prescribing drugs and medicine, the determination of the quantity to be used involves a consideration of the physical condition of the patient, and of the probable effect thereon of such drugs and medicines in each specific case. It is the belief of complainant, based upon his experience and observation and the study of medical science, that in the use of spirituous liquors as medicine it is in certain cases, including cases now under complainant's observation and subject to his professional advice, necessary, in order to afford relief from some known ailment, that the patient should use internally more than one pint of such liquor in ten days and that it is in certain cases necessary for the proper medical treatment that the patient should use internally some spirituous liquor without delay, notwithstanding that within a preceding period of less than ten days the patient may have received and used more than one pint of such liquor. Complainant conceives it to be his duty and intends, unless restrained by lawful authority, to issue prescriptions in such cases according to his best skill and judgment.

"Tenth—Complainant has never prescribed and does not intend to prescribe the use of liquor for beverage purposes. Complainant does not intend to advise or prescribe the use of liquor as medicine unless, after careful physical examination of the patient, he in good faith believes that the use of such liquor as medicine by the patient is neces-

sary and will afford relief to him from some known ailment.

\* \* \* \* \*

"Thirteenth—Complainant is advised and respectfully represents to the court as matter of law, that so much of the National Prohibition Act as purports to prohibit physicians from advising or prescribing the use, internally, for medicinal purposes by any person of more than one pint of spirituous liquor within any period of ten days, and so much of the said act entitled 'An act supplemental to the National Prohibition Act' as purports to limit the quantity of vinous or spirituous liquor that may be advised or prescribed by a physician for use, internally, for medicinal purposes by any person within the same period, are and each of them is beyond the authority conferred upon Congress by the Eighteenth Amendment to the Constitution of the United States, or otherwise, and are void and of no effect."

The court below refused to dismiss the bill and granted an injunction, the material portion of which can be found in the margin.[1] That portion of the National Prohibition Act complained of is found in title 2, section 7 (Comp. St. Ann. Supp. 1923, § 10138½cc). It reads as follows:

"No one but a physician holding a permit to prescribe liquor shall issue any prescription for liquor. And no physician shall prescribe liquor unless after careful physical examination of the person for whose use such prescription is sought, or if such examination is found impracticable, then upon the best information obtainable, he in good faith believes that the use of such liquor as a medicine by such person is necessary and will afford relief to him from some known ailment. Not more than a pint of spirituous liquor to be taken internally shall be prescribed for use by the same person within any period of ten days and no prescription shall be filled more than once. Any pharmacist filling a prescription shall at the time

indorse upon it over his own signature the word 'Canceled,' together with the date when the liquor was delivered, and then make the same a part of the record that he is required to keep as herein provided.

"Every physician who issues a prescription for liquor shall keep a record, alphabetically arranged in a book prescribed by the commissioner, which shall show the date of issue, amount prescribed, to whom issued, the purpose or ailment for which it is to be used and directions for use, stating the amount and frequency of the dose."

And that portion of the act supplemental to the National Prohibition Act, which is complained of, is found in section 2 (Comp. St. Ann. Supp. 1923, § 10138½ccc), the material portion of which reads as follows:

"That only spirituous and vinous liquor may be prescribed for medicinal purposes, and all permits to prescribe and prescriptions for any other liquor shall be void. No physician shall prescribe, nor shall any person sell or furnish on any prescription, any vinous liquor that contains more than 24 per centum of alcohol by volume, nor shall any one prescribe or sell or furnish on any prescription more than one-fourth of one gallon of vinous liquor, or any such vinous or spirituous liquor that contains separately or in the aggregate more than one-half pint of alcohol, for use by any person within any period of ten days. No physician shall be furnished with more than one hundred prescription blanks for use in any period of ninety days, nor shall any physician issue more than that number of prescriptions within any such period unless on application therefor he shall make it clearly apparent to the commissioner that for some extraordinary reason a larger amount is necessary, whereupon the necessary additional blanks may be furnished him. But this provision shall not be construed to limit the sale of any article the manufacture of which is authorized under section 4, title II, of the National Prohibition Act."

Before proceeding to a consideration of the legislation herein attacked, it is necessary to consider a preliminary question which has been raised.

[1, 2] The objection has been made that the court below was without jurisdiction, as the complaint did not show that the amount in controversy exceeded the sum of $3,000 exclusive of interest and costs. The complaint alleged that the suit was one of a civil nature and the amount in controversy was in excess of $3,000; and, as the defendants below moved to dismiss the complaint, they

---

[1] "Further ordered, adjudged, and decreed that the defendants and each of them be and they hereby are restrained and enjoined during the pendency of this action from enforcing or attempting to enforce against the complainant the provisions of section 7 of title 2 of the National Prohibition Act, in so far as the said section prescribes that not more than a pint of spirituous liquor to be taken internally shall be prescribed for use by the same person within any period of ten days; and it is further ordered that the operation of the injunction hereinabove set forth be and the same hereby is stayed pending the determination of an appeal to be taken from this decree by the defendants within the time prescribed by law."

thereby admitted the facts alleged in the complaint, so that they are in no position to raise the question of jurisdiction. Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548. We may nevertheless point out that, where an injunction is sought to prevent interference with the plaintiff's business, the amount in controversy is the value of the business to be protected and of the rights of property which it is sought to have recognized and enforced. It is not merely the damages which have accrued prior to the commencement of the action which the court regards, but it looks to the effect upon the plaintiff's business through the entire period within which the damage is threatened. Bitterman v. Louisville & Nashville Railroad, 207 U. S. 205, 225, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693.

[3] We come now to the consideration of the real question in this case, which is the validity of the Prohibition Acts as they affect the right of a medical practitioner to prescribe spirituous or vinous liquors in the treatment of disease; and in the decision of this question we are governed by the fundamental rule which controls the courts whenever they are called upon to determine any constitutional question relating to the validity of an act of legislation. The courts of the United States from the beginning, in an unbroken line of decisions, have acted on the principle that every possible presumption is in favor of the constitutionality of an act of Congress until it is overcome beyond all rational doubt. That principle was again stated in the recent case of Adkins v. Children's Hospital, 261 U. S. 525, 544, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238.

[4] The judicial duty of passing upon the constitutionality of the Acts of Congress herein involved being one of "great gravity and delicacy," this court must decide this case in favor of the validity of the statutes, unless it appears by clear and indubitable demonstration that Congress has exceeded its constitutional power in their enactment. The powers of Congress embrace those expressly granted by the Constitution and such as may be implied from those so granted.

Whatever power Congress has to prohibit the use of intoxicating liquors as a beverage it derives from the Eighteenth Amendment to the Constitution. The material part of that amendment reads as follows: "After one year from the ratification of this article the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from

the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited." And the amendment gives to Congress and the several states concurrent power to enforce it by appropriate legislation.

That amendment, as Mr. Justice Holmes, speaking for the court in Grogan v. Walker & Sons, 259 U. S. 80, 89, 42 S. Ct. 423, 424 (66 L. Ed. 836, 22 A. L. R. 1116), said, "meant a great revolution in the policy of this country, and presumably and obviously meant to upset a good many things on as well as off the statute book. It did not confine itself in any meticulous way to the use of intoxicants in this country. It forbade export for beverage purposes elsewhere. * * * It is obvious that those whose wishes and opinions were embodied in the amendment meant to stop the whole business." There can be no doubt as to what Congress intended. It intended to put an end in this country to the use of malt and spirituous liquors for beverage purposes, and to that end it prohibited the manufacture, possession, sale, importation into, and exportation from the United States, as well as transportation within the United States, of liquor for beverage purposes.

The amendment was incorporated into the Constitution because it was believed that the use for beverage purposes of intoxicating liquors was pernicious in its effects and the cause of disease, pauperism, and crime, and that the nation should protect itself against the injurious consequences arising from the use of such liquors. It was thought that by this amendment the public health, the public morals, and the public safety would be promoted by suppressing the evils connected with the excessive use of intoxicants.

The constitutionality of the state prohibition laws, when they came before the Supreme Court, had been uniformly upheld. As early as 1847 in the License Cases, 5 How. 504, 577 (12 L. Ed. 256), Chief Justice Taney, referring to the suggestion that, if a state deemed the traffic in ardent spirits to be injurious to its citizens and calculated to introduce immorality, vice, and pauperism into the state, it could prohibit it, said:

"And if any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice, or debauchery, I see nothing in the Constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper. Of the wisdom of this policy, it is not my province or my purpose

to speak. Upon that subject, each state must decide for itself."

And see Bartemeyer v. Iowa, 18 Wall. 129, 21 L. Ed. 929; Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989; Foster v. Kansas, 112 U. S. 205, 206, 5 S. Ct. 8, 97, 28 L. Ed. 696; Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205; Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 34 L. Ed. 620; Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 201, 33 S. Ct. 44, 57 L. Ed. 184; Clark Distilling Co. v. Western Maryland Railway Company, 242 U. S. 311, 320, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845; Seaboard Air Line R. Co. v. North Carolina, 245 U. S. 298, 299, 38 S. Ct. 96, 62 L. Ed. 299; Crane v. Campbell, 245 U. S. 304, 38 S. Ct. 98, 62 L. Ed. 304. In the case last cited the court said:

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a state has power absolutely to prohibit manufacture, gift, purchase, sale, or transportation of intoxicating liquors within its borders without violating the guaranties of the Fourteenth Amendment. * * * As the state has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective."

The acts passed by Congress under the authority conferred by the Eighteenth Amendment, as well as the validity of the Amendment itself, have been vigorously challenged by their opponents. The complaints about the law have been many. Its opponents have challenged the constitutionality of the amendment and of the acts of Congress enacted under it, and intended to make it effective, but thus far to little or no purpose. In the case now before the court a new question is raised.

The constitutionality of the Eighteenth Amendment came before the Supreme Court in National Prohibition Cases, 253 U. S. 350, 40 S. Ct. 486, 588, 64 L. Ed. 946. The court held the amendment was lawfully submitted by Congress to the states, was lawfully ratified by the states, and has become a part of the Constitution, and must be respected and given effect the same as the other provisions of that instrument.

In Jacob Ruppert v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 64 L. Ed. 260, the Supreme Court held that the provision in the National Prohibition Act, which declares that the words "beer, wine, or other intoxicating malt or vinous liquors" shall be construed to mean any such beverages which contain one-half of 1 per centum or more of alcohol by volume, is constitutional. The decision went upon the theory that a measure reasonably necessary to make the prohibition of intoxicating liquors effectual was within the power of Congress to enact, even though it prohibited the use of liquor containing one-half of 1 per centum or more of alcohol, and such liquor was not in fact intoxicating.

In Everard's Breweries v. Day, 265 U. S. 545, 44 S. Ct. 628, 68 L. Ed. 1174, the Supreme Court had before it section 2 of the Act of November 23, 1921, in so far as it prohibits physicians from prescribing intoxicating malt liquors for medicinal purposes. That act provides that "only spirituous and vinous liquors may be prescribed for medicinal purposes," and that all prescriptions for any other liquor and permits therefor shall be void. The contention was that the act was unconstitutional, as the prohibition of prescriptions for the use of intoxicating liquors was neither an appropriate nor reasonable exercise of the power conferred upon Congress by the Eighteenth Amendment, and also that it infringed upon the legislative power of the states in matters affecting the public health. The court overruled the objections and sustained the constitutionality of the act. Mr. Justice Sanford, writing for the court, said:

"The Constitution confers upon Congress the power to make all laws necessary and proper for carrying into execution all powers that are vested in it. Article 1, § 8, cl. 18. In the exercise of such nonenumerated or 'implied' powers it has long been settled that Congress is not limited to such measures as are indispensably necessary to give effect to its express powers, but in the exercise of its discretion as to the means of carrying them into execution may adopt any means, appearing to it most eligible and appropriate, which are adapted to the end to be accomplished and consistent with the letter and spirit of the Constitution [citing cases]. Furthermore, aside from this fundamental rule, the Eighteenth Amendment specifically confers upon Congress the power to enforce 'by appropriate legislation' the constitutional prohibition of the traffic in intoxicating liquors for beverage purposes. This enables Congress to enforce the prohibition 'by appropriate means.' National Prohibition Cases, 253 U. S. 387.

"It is likewise well settled that, where the means adopted by Congress are not pro-

hibited and are calculated to effect the object intrusted to it, this court may not inquire into the degree of their necessity, as this would be to pass the line which circumscribes the judicial department and to tread upon legislative ground. * * * Nor may it inquire as to the wisdom of the legislation. * * * What it may consider is whether that which has been done by Congress has gone beyond the constitutional limits upon its legislative discretion. It is clear that Congress, under its express power to enforce by appropriate legislation the prohibition of traffic in intoxicating liquors for beverage purposes, may adopt any eligible and appropriate means to make that prohibition effective. The possible abuse of a power is not an argument against its existence, and it has been held that the power to prohibit traffic in intoxicating liquors includes, as an appropriate means of making that prohibition effective, power to prohibit traffic in similar liquors, although non-intoxicating.

"The ultimate and controlling question then is whether, in prohibiting physicians from prescribing intoxicating malt liquors for medicinal purposes as a means of enforcing the prohibition of traffic in such liquors for beverage purposes, Congress has exceeded the constitutional limits upon its legislative discretion. In enacting this legislation Congress has affirmed its validity. That determination must be given great weight; this court by an unbroken line of decisions having 'steadily adhered to the rule that every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt.' We cannot say that prohibiting traffic in intoxicating malt liquors for medicinal purposes has no real or substantial relation to the enforcement of the Eighteenth Amendment, and is not adapted to accomplish that end and make the constitutional prohibition effective. The difficulties always attendant upon the suppression of traffic in intoxicating liquors are notorious. The federal government in enforcing prohibition is confronted with difficulties similar to those encountered by the states. The opportunity to manufacture, sell and prescribe intoxicating malt liquors for 'medicinal purposes,' opens many doors to clandestine traffic in them as beverages under the guise of medicine, facilitates many frauds, subterfuges and artifices, aids evasion and, thereby and to that extent, hampers and obstructs the enforcement of the Eighteenth Amendment. A provision in a revenue act which tends to diminish the opportunity for clandestine traffic in avoidance of the tax, has a reasonable relation to its enforcement."

[5] We have quoted thus fully because the reasoning upon which that decision went is exactly the reasoning upon which we decide the case now before us. The only difference between that case and this is that the former case related to the prohibition of malt liquors, while this relates to spirituous or vinous liquors, and the further distinction seems to us, so far as the legal right is concerned, that in the former case Congress prohibited *any* prescription of malt liquors, while in this case we are concerned with the fact that it limited to a specified quantity the amount of spirituous or vinous liquor that can be prescribed within a fixed period. In the former case the court declared that, in prohibiting prescriptions of intoxicating malt liquors for medicinal purposes, Congress had not violated any personal rights of the appellants protected by the Constitution.

During the pendency of the bill in Congress, hearings were had before the Judiciary Committee, and an extract from its report is found in the margin.[2] If Congress did not exceed the constitutional limits upon its legislative discretion in prohibiting physicians from prescribing intoxicating malt liquors for medicinal purposes as a means of enforcing the prohibition of traffic in such liquors for beverage purposes, we are unable to see how it can be said that it exceeded the

[2] "The evidence presented to the committee to the effect that beer has never been recognized as a medicine was overwhelming. The United States Pharmacopœia has never listed it as a medicine. One hundred and four of the leading physicians and scientists in the nation signed the following statement: 'The undersigned physicians of the United States desire to place on record their conviction that the manufacture and sale of beer and other malt liquors for medicinal purposes should not be permitted. Malt liquors never have been listed in the United States Pharmacopœia as official medicinal remedies. They serve no medical purpose which cannot be satisfactorily met in other ways, and that without the danger of cultivating the beverage use of an alcoholic liquor.' Several thousand other physicians signed the above, or a similar statement, and presented it to the committee. The attorney for the Anheuser-Busch Company, Inc., appeared before the committee and called attention to the fact that, if beer was permitted as a medicine, it would be impossible to enforce the prohibition law. There was only one doctor who appeared before the committee in favor of beer as a medicine, and the New York County Medical Association, the official medical association of New York, denied that he spoke for them in favoring beer for medicinal purposes."

constitutional limits of its discretion in prohibiting physicians from prescribing for medicinal purposes "more than one-half pint of alcohol for use by any person within any period of ten days." It was urged upon the court in the first case that it was not within the power of Congress to prohibit physicians from prescribing malt intoxicating liquors for medicinal purposes, if in their judgment such prescriptions seemed best, and according to their science and practice of medicine. There was evidence in that case not only that beer is a necessary therapeutic agent, but a leading physician's affidavit that he "had far greater occasion to prescribe beer than to prescribe spirituous or fermented liquors." It was said at the argument, and not wholly without justification, that the only fundamental distinction between the two cases was that the medical adherents of beer complained that they were entirely prohibited from prescribing this so-called necessary therapeutic agent, while the medical adherents of whisky and brandy were complaining of the restriction placed upon the amount of spirituous or vinous liquors they were permitted to prescribe.

The Judiciary Committee, in its report on the Willis-Campbell Act, referring to section 2, had this to say:

"While the majority of the states prohibit wine for medicinal purposes, it was not deemed best by the committee that such provision should be inserted in the Prohibition Act at this time. In order, however, that this privilege should not be abused, it was deemed best to specifically limit its use, the same as has been done with spirituous liquor. Unless some limit is placed upon the amount of such liquors that may be prescribed, a number of physicians who do not have the high ethical standards of the large majority will abuse the privilege. Evidence was presented to the committee of physicians who issued hundreds of prescriptions within a few days, when the total number of other prescriptions was a negligible number. In view of the fact that most of the states have more stringent provisions than the one contained in section 2, this legislation will work no hardship upon the profession." House Report No. 224, 67th Congress, 1st Session.

The fact may also be noted that whether or not whisky, wine, or beer has a therapeutic value in the treatment of disease is a very much disputed question in the medical profession. In the year 1917 the American Medical Association, which has a membership of 150,000 physicians, passed a resolution discouraging the use of alcohol as a

therapeutic agent, which resolution is in the margin.[3] It is impossible for us to say as a matter of law that the limitation placed upon physicians in prescribing liquor as a remedy for disease is not fairly adapted to the end of protecting the people of the United States against the evils which result from the use of intoxicating liquors.

We are not ignorant of the manifold difficulties attendant upon an attempt to enforce the laws prohibiting the use of intoxicating liquors, and we have no right to say that such restriction as Congress has imposed upon the right of physicians to use such liquors in the treatment of disease, is so arbitrary, or unreasonable, or without such proper relation to the legitimate legislative purpose, as renders the legislation in question void and without effect. It appears that, when the statute was passed, the Congress was aware of the opposing theories held by physicians as to the therapeutic value of spirituous and vinous liquors in the treatment of disease, and was compelled to determine whether physicians, in the practice of their profession, should be permitted to prescribe them at all and if so to what extent.

In Jacobson v. Massachusetts, 197 U. S. 11, 30, 25 S. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765, the question was whether a compulsory vaccination law of a state was void, as violating the liberty secured by the Constitution of the United States to every person within its jurisdiction. In that case attention was called to the conflicting views entertained in the medical profession as to the value of vaccination as a preventative measure for smallpox. The court, in upholding the validity of the law, said:

"We must assume that, when the statute in question was passed, the Legislature of Massachusetts was not unaware of these opposing theories, and was compelled, of necessity, to choose between them. It was not compelled to commit a matter involving the public health and safety to the final decision of a court or jury. It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legisla-

---

[3] "Whereas, we believe that the use of alcohol as a beverage is detrimental to human economy; and

"Whereas, its use in therapeutics, as a tonic or a stimulant or as a food has no scientific basis, therefore be it resolved that the American Medical Association opposes the use of alcohol as a beverage, and be it further

"Resolved, that the use of alcohol as a therapeutic agent should be discouraged."

tive department to determine, in the light of all the information it had or could obtain. It could not properly abdicate its function to guard the public health and safety. The state Legislature proceeded upon the theory which recognized vaccination as at least an effective, if not the best known, way in which to meet and suppress the evils of a smallpox epidemic that imperiled an entire population. Upon what sound principles as to the relations existing between the different departments of government can the court review this action of the Legislature? If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the Legislature has done comes within the rule that, if a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

And in like manner this court cannot say that either the Volstead or the Willis-Campbell Act unduly invades the complainant's liberty to practice his profession according to his judgment. It was for Congress, and not the courts, to determine whether it was necessary or advisable to permit these liquors to be prescribed at all by physicians, and, if to be prescribed, to fix the quantity that may be prescribed at any one time or within a fixed period, and if, in the opinion of Congress, the public safety or the public morals required the prohibition of the use of intoxicants, that prohibition might be absolute or qualified as Congress might determine. And we fail to discover anything in the acts of Congress herein involved which is in violation of the constitutional guaranties of life, liberty, and property. "No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare." Mugler v. Kansas, supra.

In Purity Extract Co. v. Lynch, 226 U. S. 192, 33 S. Ct. 44, 57 L. Ed. 184, the court had before it the constitutionality of a Mississippi statute prohibiting the sale of malt liquors. Poinsetta was sold as a beverage. It contained no alcohol, and was not intoxicating, and the question was whether, being a malt liquor, and not alcoholic or intoxicating, it was competent to prohibit its sale. The court upheld the law. In an opinion written by Justice Hughes, for a unanimous court, he said:

"The existence of this power, as the authorities we have cited abundantly demonstrate, is not to be denied simply because some innocent articles or transactions may be found within the prescribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat. That the opinion is extensively held that a general prohibition of the sale of malt liquors, whether intoxicating or not, is a necessary means to the suppression of trade in intoxicants, sufficiently appears from the legislation of other states and the decision of the courts in its construction. State v. O'Connell, 99 Maine, 61, 58 Atl. Rep. 59; State v. Jenkins, 64 N. H. 375; State v. York, 74 N. H. 125, 127; State ex rel. Guilbert v. Kauffman, 68 Oh. St. 635, 67 N. E. Rep. 1062; Luther v. State (Nebraska), 20 L. R. A. (N. S.) 1146; Pennell v. State, 141 Wisconsin, 35, 123 N. W. Rep. 115. We cannot say that there is no basis for this widespread conviction. The state, within the limits we have stated, must decide upon the measures that are needful for the protection of its people, and, having regard to the artifices which are used to promote the sale of intoxicants under the guise of innocent beverages, it would constitute an unwarrantable departure from accepted principle to hold that the prohibition of the sale of all malt liquors, including the beverage in question, was beyond its reserved power."

[6] A person has an inherent right to life, and in order to maintain it a right to eat and drink. But the right to drink liquors which are intoxicating the state or the United States may take away, and in order to do so effectively the government may take away the right to drink certain liquors containing alcohol insufficient in amount to produce intoxication. That much is settled by the decisions of the courts; and for the same reason which leads the law-making power of a state or of the United States to prohibit the use of liquor containing a less amount of alcohol than is required to make it intoxicating, the law-making power may restrict the physician as to the amount of such liquor he can prescribe to his patient in a given period. We cannot say that a physician's right to prescribe alcohol in the treatment of disease is inherent, and cannot be regulated or controlled by the law-making power of the state. The proposition is unsupported by authority and is unsound in principle.

It remains true that the inquiry in such a case as this is whether, considering the end in view, the legislation complained of, which restricts the right of physicians to prescribe spirituous and vinous liquors in the treatment of disease, "passes the bounds of reason and assumes the character of a merely arbitrary fiat."

Because we cannot say that it does, the decree is hereby reversed, and the District Court is directed to dismiss the bill.