CORNELI v. MOORE, COLLECTOR OF INTERNAL REVENUE.

GHIO v. MOORE, COLLECTOR OF INTERNAL REVENUE.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

BRYAN v. MILES, COLLECTOR OF INTERNAL REVENUE FOR THE DISTRICT OF MARYLAND, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

EASTES v. CRUTCHLEY, COLLECTOR OF INTERNAL REVENUE FOR THE SIXTH DISTRICT OF MISSOURI, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

Nos. 174, 175, 428, 548.  Argued December 15, 1921.—Decided January 30, 1922.

1. Under the National Prohibition Act, the owner of whisky stored in a bonded warehouse can not secure its release upon payment of

the tax, for transportation to his dwelling for consumption there as a beverage by himself, his family and *bona fide* guests. Sections 3, 25, 33, 37, Title II, and § 6, Title III, considered. P. 495. *Street* v. *Lincoln Safe Deposit Co.,* 254 U. S. 88, distinguished.

2. Thus construed, the act does not deprive the owner of the liquor of property without due process of law, or take it for public purposes without compensation. P. 498.

3. So held, where ownership was acquired, by purchase of warehouse receipts, (a) before the ratification of the Eighteenth Amendment, (b) after the ratification and before the effective date of the Prohibition Act, and (c) after that date. P. 498.

Affirmed.

Appeals from decrees of District Courts dismissing on motions as many bills filed by parties alleging themselves to be owners of barrels of whisky in bonded warehouses and praying mandatory injunctions to compel the collectors of internal revenue in charge to accept payment of the government taxes, issue the stamps and allow removal. In Nos. 428 and 548, the federal prohibition directors were also joined, the bills praying that they be required to issue the necessary permits for removal and transportation to plaintiffs' homes. In No. 174, the plaintiff alleges that he became the owner in the spring of 1917, and in No. 175 that ownership began on February 28, 1920, by purchase of a warehouse receipt. In Nos. 428 and 548, the bills show that ownership began by purchase of warehouse receipts, October 2, 1919, and August 24, 1917.

*Mr. Elliott W. Major* and *Mr. Glendy B. Arnold* for appellants in Nos. 174, 175, and 548. *Mr. John T. Barker* was also on the brief in No. 548.

*Mr. Julian S. Jones* and *Mr. J. Wallace Bryan,* with whom *Mr. James T. O'Neill, Mr. Glendy B. Arnold* and *Mr. Elliott W. Major* were on the briefs, for appellant in No. 428.

*Mr. Solicitor General Beck* and *Mrs. Mabel Walker Willebrandt,* Assistant Attorney General, for appellees.

*Mr. Wayne B. Wheeler,* by leave of court, filed a brief as *amicus curiae.*

Mr. Justice McKenna delivered the opinion of the court.

These cases, though having different parties and coming from different courts, are dependent upon the same considerations. They differ in some details but they all involve the Eighteenth Amendment to the Constitution of the United States and its assistant legislation, the National Prohibition Act.

The Amendment after its ratification prohibited for beverage purposes, among other things, the transportation of intoxicating liquor within the United States and all territory subject to the jurisdiction thereof. And Congress and the States were given concurrent power to enforce the prohibition by appropriate legislation.

Congress in pursuance of that power passed the National Prohibition (Volstead) Act, 41 Stat. 305. Are the cases at bar within the mandate and the prohibition, are the special questions involved in them.

First, as to the cases as displayed in the bills—there are some differences in their averments but their essential allegations identifying them in principle are as follows: The appellees were, respectively, Collectors of Internal Revenue for the First Internal Revenue District of the State of Missouri, the District of Maryland, and the Sixth Internal Revenue District of the State of Missouri. It was the duty of each to collect and receive taxes on distilled spirits in government bonded warehouses, and upon payment of the taxes to issue revenue stamps showing the payment of the taxes. As such officers they had, respectively, the custody and control of the spirits, and the right of ingress to and egress from the warehouses.

Each appellant became the purchaser of a barrel of whiskey, in one of the warehouses (it is designated),

which was identified and which he was desirous of remov-
ing to his dwelling for use and disposition of the spirits
according to law. The appellees refused to release or
deliver the spirits, or to accept the payment of the
taxes thereon which appellants either tendered or, on
account of opposing declarations of appellees, ommitted
to tender.

The refusal of appellees to release the spirits is asserted
to be wrongful and illegal and a violation of the Fifth
Amendment to the Constitution of the United States, in
that it deprives appellants of their property without due
process of law and takes it for public use without just
compensation.

The prayers of the bills were in effect (we disregard par-
ticulars) to require appellees to do what was necessary to
release the spirits from the warehouses and to enable
them to be transported to the respective dwellings of
appellants.

The bills were dismissed upon motions of appellees.

Against the rulings upon the motions, and against the
decrees dismissing the bills, appellants adduce certain
provisions of the National Prohibition Act and cite *Street*
v. *Lincoln Safe Deposit Co.*, 254 U. S. 88.

So much of the cited portions as is relevant we insert
in the margin. We may observe, however, that while
their provisions extend to the manufacture, sale and
other disposition of intoxicating beverages, as well as to
their transportation, we only insert the provisions con-
cerning the latter.[1]

---

[1] " Sec. 3. No person shall on or after the date when the eighteenth
amendment to the Constitution of the United States goes into ef-
fect . . . transport . . . or possess any intoxicating liquor
except as authorized in this Act, and all the provisions of this Act shall
be liberally construed to the end that the use of intoxicating liquor
as a beverage may be prevented. . . . *Provided,* That nothing in
this Act shall prohibit the purchase and sale of warehouse receipts

Before considering the provisions here specially involved, we may say that the act has been sustained, and it has been decreed that the power of Congress can be asserted against the disposal for beverage purposes of all liquor manufactured before the Amendment became effective, as it can be asserted against subsequent manufacture for those purposes. Either case is within the constitutional mandate and prohibition.

A consideration of the act becomes necessary. Section 3 is comprehensive in its prohibition, and it takes pains to provide that it shall have such liberality of construction as to achieve its declared purpose.

---

covering distilled spirits on deposit in Government bonded warehouses, and no special tax liability shall attach to the business of purchasing and selling such warehouse receipts."

" Sec. 25. It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. . . . No search warrant shall issue to search any private dwelling occupied as such. . . . The term ' private dwelling ' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house. . . ."

" Sec. 33. After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being . . . disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner within ten days after the date when the eighteenth amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling and of his bona fide guests when entertained by him therein; and the burden of proof shall be upon the possessor in any action concerning the same to prove that such liquor was lawfully acquired, possessed, and used."

It is, however, contended that there is modification of this apparent universality of prohibition, and that, by a permission of traffic in warehouse receipts, liquor in storage in bonded warehouses is not subject to the ban of the section.

Regarding the words of § 3 in connection with some of the provisions of §§ 25 and 33, they give some plausibility to the contention and some puzzle to construction, but we are repelled nevertheless from those of appellants. To accept them would defeat the purpose of the act and its achievement of the mandate of the Constitution. That mandate is, as will be seen by reference to § 1 of the Amendment, that the "transportation of intoxicating liquors within . . . the United States . . . for beverage purposes " shall be prohibited. And, as we have said, the act declares (§ 3) that all of its provisions shall be liberally construed "to the end " to quote its words, " that the use of intoxicating liquor as a beverage may be prevented." The method of appellants, we think, tended to the opposite effect; tended to the use of liquor as a beverage—not its prevention.

We are unable to see in § 33 which takes illegality from the "liquors in one's private dwelling while the same is occupied and used by him as his dwelling only " and the rights that may attach to liquors in such situation an intention to extend such rights to liquors not so situated or, to put it more pointedly, an intention to make all bonded warehouses of the country outbuildings of its dwellings.

There is nothing favorable to appellants' contention in § 37.[1] It permits transportation to bonded warehouses

---

[1] " Sec. 37. Nothing herein shall prevent the storage in United States bonded warehouses of all liquor manufactured prior to the taking effect of this Act, or prevent the transportation of such liquor to such warehouses or to any wholesale druggist for sale to such druggist for purposes not prohibited when the tax is paid, and permits may be issued therefor. . . ."

but not from them as inferred by appellants. Transportation from them is confined to transportation to a wholesale druggist for sale to him for purposes not prohibited. A permit is necessary even for this.

In connection with § 37; § 6, Title III of the act is pertinent. It permits distilled spirits produced and fit for beverage purposes remaining in bonded warehouses to be withdrawn for denaturing " or for deposit in a bonded warehouse established under this Act."

Counsel urge *Street* v. *Lincoln Safe Deposit Co., supra,* against this conclusion, and as sustaining their contention. In that case, by motion to dismiss, it was admitted that Street was the lessee of a room in the Deposit Company's warehouse, in which he had stored liquors, acquired prior to the effective date of the National Prohibition Act, which liquors were "in his exclusive possession and control, and are intended, and will be used only for personal consumption by himself and the members of his family or his bona fide guests." The storage room was obviously the use of a convenience very commonly employed and contributory to his dwelling, and therefore, for the reasons stated in that opinion, it was concluded that the National Prohibition Act did not render unlawful the storage of liquors there involved or their transportation, under proper permit, to the dwelling of the owner for lawful uses. And this difference in the facts in the case from those in the cases at bar removes it as a precedent. There is no analogy in Street's relation to the room in the Deposit Company's warehouse and appellants' relation to bonded warehouses. They had neither control, access to nor possession of the spirits they purchased. Mere ownership was not the equivalent. Under § 33 there must be ownership, and possession in one's private dwelling, and that character cannot be assigned to the bonded warehouses of the Government.

Comment on other provisions of the act we do not think is necessary. A reference to them demonstrates that they have no militating force against our conclusion.

But appellants contend the effect we assign to the act is to assign to it the effect of depriving them of their property without due process of law or taking it for public purposes without just compensation. To understand the conditions of the contention, a distinction in the cases must be noted. The purchases by appellants were at different dates. The spirits purchased by Corneli were all stored in bond in the Spring of 1917, a date prior to the ratification of the Eighteenth Amendment. Bryan became the owner of his on the second of October, 1919, and, therefore, prior to the effective date of the Volstead Act which was January 16, 1920. *Dillon* v. *Gloss*, 256 U. S. 368. Ghio's purchase was about the twenty-eighth of February, 1920, which was after the date of the Amendment and the effective date of the Volstead Act. Eastes avers his ownership dates from August 24, 1917.

In considering the bearing of the dates of purchase and their relation to the dates of the Amendment and the Volstead Act, the question of their construction blends in the discussion somewhat confusingly with the question of their constitutionality. It is asserted that the Eighteenth Amendment was not intended to be retrospective and that if it and the Volstead Act should be so treated, that is, if applied to liquor-manufactured and lawfully acquired before their respective dates, they are void—they thereby taking from property its essential attributes, " the right to use it, possess it and enjoy it," contrary to the Fifth Amendment to the Constitution,—and that the Fifth Amendment is not repealed by the Eighteenth Amendment. We are not disposed to trace the elements of the contentions minutely—they are answered in all their phases by the *National Prohibition Cases*, 253 U. S. 350, 387.

*Decrees affirmed.*

Mr. Justice McReynolds, dissenting.

These cases differ somewhat and I speak with reference to No. 174—Corneli v. Moore,—finally determined on motion to dismiss.

The opinion and ruling just announced seem to me in direct conflict with *Street* v. *Lincoln Safe Deposit Co.* (1920), 254 U. S. 88. I think the reasoning of that opinion is bad; but it has been adopted, and the construction which it placed upon the act should be adhered to or frankly overruled. The effort to distinguish the present case from the earlier one is but toying with the immaterial.

Prior to the enactment of any National Prohibition law and during the Spring of 1917, Corneli acquired the barrel of distilled spirits numbered 125,694, then on deposit in United States General Bonded Warehouse No. 1, St. Louis, Mo., where he resides. In strict conformity with law he allowed the spirits to remain there until the Autumn of 1920, when he offered to pay the taxes and demanded permission to move them to his home for lawful use.

In *Street* v. *Lincoln Safe Deposit Co.*, wines and liquors, worth more than $3,000 " securely and properly packed and stored in bottles, barrels, casks and cases," had long been held in the large public warehouse, No. 60 East Forty-second Street, New York City, owned and operated by the Deposit Company, and it was alleged that " complainant does not intend to remove the same voluntarily except as they may be required from time to time for consumption". Notwithstanding the inhibitions of the Volstead Act it was ruled that the owner might continue to store them for an indefinite period and then remove them to his dwelling for personal use. The opinion not only declared the storage lawful but also said (p. 93): " That transportation of the liquors to the home of ap-

6267°—22——37

pellant, under the admitted circumstances, is not such as is prohibited by the section is too apparent to justify detailed consideration of the many provisions of the act inconsistent with a construction which would render such removal unlawful.  .  .  ."

Corneli entrusted his supply to a government warehouse as permitted by the statute and is denied the privilege of taking it home because that warehouse is not contributory to his dwelling, nor an adjunct thereto, nor an outbuilding connected therewith.   Street made no such claim concerning the Forty-second Street Warehouse—indeed his counsel seem to have been wholly ignorant of this extraordinary extension of his home—and the decree in his favor was not rested on that gossamer.   It went upon the assumption that Congress never intended to prohibit bona fide owners of lawfully acquired liquors from storing and removing them for personal use at home, although the Government stoutly maintained the contrary view.   The following quotation from the opinion sufficiently indicates the theory accepted by the court:

 " It may be that the custody of liquors by a warehouse company was thus not declared to be unlawful because the writers of the act did not have such a case in mind, but it was more probably because Congress would not consent to allow lawful possession and use of liquors in dwellings having storage facilities for them, while denying the only possible means of preserving and protecting such liquors to persons with less commodious homes.   The Congress was concerned with the great problem of preventing the manufacture and sale of intoxicating liquors for beverage purposes in the future, and it seems to have given but slight attention to the consumption of such relatively small amounts of such liquors as might be in existence in private ownership and intended for consumption by the owner, his family or his guests, when the Amendment and the act should take effect.   An intention

to confiscate private property, even in intoxicating liquors, will not be raised by inference and construction from provisions of law which have ample field for other operation in effecting a purpose clearly indicated and declared."

If Corneli had only suspected the remarkable power of the Forty-second Street Warehouse to attach itself to the dwellings of all patrons, without regard to distance, he might have chosen a safer course. He stored where the statute said he might. Now he is told that no analogy exists between his lonely barrel there and the many " bottles, barrels, casks and cases " which, within more favored walls, await the pleasure of their owner.