### O'SULLIVAN v. POTTER, Federal Prohibition Director.

#### (District Court, D. Massachusetts. January 2, 1923.)

#### No. 1788.

1. **Intoxicating liquors** ⊙≈➤108(10)—**Washington officials not necessary parties to suit to review order revoking drug store permit.**

   In suit in equity, brought under National Prohibition Act, tit. 2, §§ 5, 9, to review order revoking plaintiff's drug store permit, *held*, that the Commissioner of Internal Revenue and the Prohibition Commissioner, both of Washington, D. C., were not necessary parties.

2. **Intoxicating liquors** ⊙≈108(10)—**In suit to review order canceling drug store permit, trial is de novo.**

   In suit in equity brought under National Prohibition Act, tit. 2, §§ 5, 9, to review order revoking plaintiff's drug store permit, *held*, that the scope of the review is, for most practical purposes, a trial de novo.

3. **Intoxicating liquors** ⊙≈108(10)—**On issue of canceling drug store permit, government may show other violations.**

   In suit in equity, brought under National Prohibition Act, tit. 2, §§ 5, 9, to review order revoking plaintiff's drug store permit, *held*, that the government may plead and prove other violations of the law than the one originally relied on.

4. **Intoxicating liquors** ⊙≈108(4)—**Proceeding to revoke drug store permit held defective.**

   In suit in equity, brought under National Prohibition Act, tit. 2, §§ 5, 9, to review order revoking plaintiff's drug store permit, proceedings before the commissioner *held* defective, in that the statement of facts annexed to the citation for hearing was too broad in giving neither dates nor names of alleged purchasers, and in that the record of revocation contained matter not adduced at the hearing and statements used as evidence which plaintiff had no chance to meet.

**5. Intoxicating liquors ⬦⟹108(5)—Revocation of drug store permit held sustained by evidence.**

In suit in equity, brought under National Prohibition Act, tit. 2, §§ 5, 9, to review order revoking plaintiff's drug store permit, evidence *held* to sustain order of revocation.

In Equity. Suit by James H. O'Sullivan against Elmer C. Potter, Federal Prohibition Director. Bill dismissed.

Matthew L. McGrath, of Roxbury, Mass., and Leo A. Rogers, of Boston, Mass., for plaintiff.

Robert O. Harris, U. S. Atty., and Elihu D. Stone, Sp. Asst. U. S. Atty., both of Boston, Mass., for defendant.

ANDERSON, Circuit Judge. This is a bill in equity brought under section 9, title 2, of the National Prohibition Act (41 Stat. 305), to secure the reversal of an order revoking the plaintiff's drug store permit. So far as appears, it is the first case involving the scope and nature of the reviewing proceedings authorized under sections 5, 6, and 9 of title 2. It raises several questions of interest and importance, on which this court is without the benefit of judicial decisions clearly in point. But examination of the large number of cases involving judicial review of administrative rulings helps but little in solving a problem which is essentially one of interpretation and application of a particular statute. See Judicial Review of Administrative Action, 35 Harv. L. R. December, 1921, p. 127, by E. F. Albertsworth, where the cases are cited and reviewed.

[1] 1. As to necessary parties:

The government contends that the defendant, the Prohibition Director of Massachusetts, had no authority to revoke such permit, and did not in fact revoke it, and that the Commissioner of Internal Revenue and the Prohibition Commissioner, both in Washington, D. C., are necessary parties, and consequently moves to dismiss.

But the order of revocation, made a part of the bill, purports to be issued by the defendant pursuant to his own authority, and not as the conduit of power emanating from either of the commissioners in Washington. Title 2, § 1, par. 7, of the Prohibition Act, gives specific authority to the commissioner to delegate power to any assistant or agent. Congress obviously contemplated the delegation of such power to local officials. The presumption is that the defendant had, and did not usurp, the power he purported to exercise. It cannot be assumed that Congress intended parties aggrieved by such administrative rulings to be remitted to Washington for a remedy, or that the heads of departments in Washington should or could be required to appear in all the District Courts of the United States as necessary parties in such reviewing proceedings. No method is provided for bringing the Washington officials within the jurisdiction of this court. To sustain this contention would leave the plaintiff practically remediless. The motion must be denied.

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

But in this case the question of parties has now become immaterial, for, by agreement, the bill has been amended, making the Prohibition Commissioner a party defendant, the government concedes his authority to revoke, and the United States attorney has, duly authorized, appeared for him.

Moreover, it is stated that the Commissioner has, under a regulation made since the revocation now attacked, vested full power in the local director, thus wisely recognizing the expediency of facilitating speedy and economical local review of questioned administrative rulings.

[2] 2. The most important question is as to the nature and scope of the review provided by sections 9 and 5. The government's contention is that the statute should be narrowly construed, in close analogy to habeas corpus in deportation proceedings (Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369), or to court review of orders of the Postmaster General (Public Clearing House v. Coyne, 194 U. S. 497, 24 Sup. Ct. 789, 48 L. Ed. 1092). Compare Ohio Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 Sup. Ct. 527, 64 L. Ed. 908.

The plaintiff contends that the review is nearly, if not quite, a trial de novo. I am constrained to the substance of the latter view. Section 9 provides that such revision proceedings may originate before the commissioner either on a "complaint under oath setting forth facts showing, or if the commissioner has reason to believe that any person who has a permit is not in good faith conforming to the provisions of this act, or has violated the laws of any state relating to intoxicating liquor." Thereupon citation is to issue, "accompanied by a copy of such complaint, or in the event that the proceedings be initiated by the commissioner with a statement of the facts constituting the violation charged," summoning the permittee to a hearing. This hearing is to be "within the judicial district and within fifty miles of the place where the offense is alleged to have occurred, unless the parties agree on another place." This provision indicates the congressional purpose to have local remedies for local grievances. If, at the hearing, the commissioner finds that the permittee "has been guilty of willfully violating any such laws, as charged, or has not in good faith conformed to the provisions of this act, such permit shall be revoked, and no permit shall be granted to such person within one year thereafter." The proceedings thus authorized and required are closely analogous, both in pleading and in procedure, to court proceedings. If the commissioner revokes the permit, then, under section 5, the permittee "may by appropriate proceeding in a court of equity, have the action of the commissioner reviewed, and the court may affirm, modify, or reverse the finding of the commissioner, as the facts and law of the case may warrant." This language is very broad, and seems to prohibit any narrow construction of the word "review." It does not call for a revision of the proceedings; it calls for a revision of the finding, and provides explicitly that the court shall affirm, modify, or reverse the finding "as the facts and law of the case may warrant." It does not contemplate remanding to the commissioner for the correction of errors of either fact or law. It calls for direct action by the court on "the

facts of * * * the case," determined by the court apparently as they would be determined in any ordinary equity case.

Nor does the statute either expressly or by fair implication contemplate that the finding of the commissioner shall have either prima facie or other weight in the determination of the facts upon which the case must turn. True, the finding of the commissioner has, in one aspect, a prima facie weight; for the order of revocation stands until the plaintiff has made out a case. But, in determining whether a case is made out, there is nothing in the statute requiring the court to regard the finding of the commissioner as evidence.

It follows, I think, that the judicial review is, for most practical purposes, a trial de novo.

[3] 3. Is such trial before the court to be limited to the case set up and tried before the commissioner in accordance with the provisions of section 9, or may the government plead and prove other violations? The weight of argument seems to be in favor of the right of the government, seasonably pleading other derelictions, thus to show to the court that the permittee is not entitled to a reversal of the order of revocation, even if he prevails in the case originally tried before the commissioner.

It should not be overlooked that the prohibition officers are not equipped with power to summon witnesses, or to administer oaths. The proceedings before the commissioner are administrative. But the permittee has, if the rulings above are correct, a broad and inclusive power to invoke judicial revision of the administrative order, and to have a full trial, with all the usual processes for enforcing the attendance of witnesses and the giving of evidence under oath. The government should have corresponding power and right. It would not be in the interest of speedy, economical, and effective administration of the act to limit such judicial review strictly to the violation charged in the original administrative proceedings under section 9, and thus to ground a reversal of an order of revocation against a permittee guilty of gross derelictions, perhaps not discovered by the government until after the revocation proceedings before the commissioner. A permittee, invoking judicial revision of an order of revocation, should be prepared, on proper pleadings, to meet in court every charge of violation of state and national law sufficient to disentitle him to the relief sought. To hold otherwise would be to cripple the government in its difficult task of eliminating lawless and unfaithful permittees.

Some support is lent to this view by the fact that under section 6 the commissioner's denial of an application for a permit may also be reviewed by a court of equity in the manner provided in section 5. Plainly, in a case involving the right of an applicant to receive a permit, it would be open to the government to show to the court any and all grounds of unfitness for such trust.

[4] 4. If the views above indicated, that the permittee has an unrestricted right to a trial de novo, are sound, it is unnecessary to consider whether the proceedings before the commissioner in this case conformed to the requirements of section 9. But if section 5 should on appeal be construed as grounding review only when the proceedings

before the commissioner are first found defective, then it is material to consider the preliminary proceedings.

The statement of facts annexed to the citation for the hearing is as follows:

### "Statement of Facts.

"Permittee will be called upon to explain the sale of gin without a prescription in the presence of inspectors from this office and on various other occasions."

This statement is too broad and indefinite; it gives neither dates nor names of alleged purchasers. The plaintiff was entitled to more specific notice of what he was to be called upon to meet.

Again, the record upon which the plaintiff's permit was revoked contained matter not adduced at the hearing, and statements used as evidence that the plaintiff had no chance to meet. Neither in letter nor in spirit were the requirements of section 9 complied with. The proceedings before the commissioner were defective.

It is not unfit to observe that, even if there be an unrestricted right of court review, prohibition officials should comply fully with the requirements of section 9. Reviews should not be provoked and promoted by disregard of the manifest purpose of that section, to make the administrative proceedings grounding revocation fair and open, with full opportunity for the permittee to meet all charges relied upon. While administrative, they are quasi judicial. They should lack no element of fairness. Any other course would discredit the administration of the act and overload the courts with a mass of unnecessary litigation.

[5] 5. On evidence hopelessly conflicting, the case has been tried at length. It may be briefly disposed of. The controlling issue is one of veracity and credibility. The plaintiff attacks the motives, conduct, and veracity of Mrs. Margaret Noonan, who testified that, after fruitless protest against the plaintiff's sale of synthetic gin to her husband, who was drinking to excess, she arranged with the prohibition officers for a purchase of gin from the plaintiff, in order to ground proceedings to revoke his permit. This attack is in no respect sustained by any credible testimony.

Without detailed review, I find on all the evidence that Mrs. Noonan was a truthful and reliable witness; that the plaintiff sold to her, on or about January 17, 1922, a pint of synthetic gin, as testified by her; that he also sold on various occasions prior to January 17, 1922, large quantities of synthetic gin to her husband; and that the plaintiff has not in good faith conformed to the provisions of the National Prohibition Act.

The order of revocation must be affirmed, and the bill dismissed.