**SHAPIRO et al. v. LYLE, Prohibition Administrator.**

District Court, W. D. Washington, N. D. February 11, 1929.

No. 656.

John F. Dore and F. C. Reagan, both of Seattle, Wash., for plaintiffs.

Anthony Savage, U. S. Atty., and Paul D. Coles, Asst. U. S. Atty., both of Seattle, Wash., for defendant.

NETERER, District Judge (after stating the facts as above). ▮ It is not contended that the National Prohibition Act (27 USCA) intrudes into the field of opinion, or restrains the profession of religious faith or propoganda of religious principles, or inhibits the use of sacramental wine in the practice of religious rites. It was never intended the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, * * * " could be invoked as a defense to acts inimical to the peace and good order of society (Davis v. Beason, 133 U. S. 342, 10 S. Ct. 299, 33 L. Ed. 637), and where legislation relates to general welfare in the interests of peace and good order, regulation is not inhibitive (Mormon Church v. United States, 136 U. S. 1, 10 S. Ct. 792, 34 L. Ed. 481). The Eighteenth Amendment was approved by all but two states of the United States and the Supreme Court in the interest of peace, good order, and general welfare, and the National Prohibition Act was approved by the Supreme Court for like reasons.

▮ The contention that the National Prohibition Act is a deprivation of the free exercise of religion by restricting the delivery of unlimited use of wine, and is contrary to the constitutional guaranty of religious freedom, is, as said by the Supreme Court in Mormon Church v. United States, supra, at page 49 of 136 U. S. (805), altogether a sophistical plea:

"No doubt the Thugs of India imagined that their belief in the right of assassination was a religious belief; but their thinking so did not make it so. The practice of suttee by the Hindu widows may have sprung from a supposed religious conviction. The offering of human sacrifices by our own ancestors in Britain was no doubt sanctioned by an equally conscientious impulse. But no one, on that account, would hesitate to brand these practices now as crimes against society, and obnoxious to condemnation and punishment by the civil authority."

The quantity of wine for sacrificial offering was always *limited*. See Exodus 29:40; Leviticus 23:13; Numbers 15:5—Holy Scriptures. Unlimited use of wine was disapproved by the prophets of old. See Isaiah 5:11; 28:1–8; Jeremiah 35:5, 6. See, also, Numbers 6:3; Proverbs 20:1; 23:29–31; Judges 13:14; Hosea 4:11—Holy Scriptures.

Wine for religious rites is provided by the National Prohibition Act and Regulations. The Commissioner and Secretary of the Treasury no doubt collaborated with the premier chief rabbis of the United States before promulgating the regulations as to wine required for sacramental purposes, and provision is made for extra supply under extraordinary conditions, and insufficiency of allowance has never been charged, so far as reported cases disclose.

▮ Regulations prescribed by the Commissioner, approved by the Secretary of the Treasury, under section 4, subd. 7, 27 USCA, have the force and effect of law. Oertel v. Gregory et al. (D. C.) 270. F. 789; Stroh v. Davis (D. C.) 8 F.(2d) 773; Sharp v. United States (C. C. A.) 16 F.(2d) 876; Schnitzler v. Yellowley (D. C.) 290 F. 849.

▮ Neither the National Prohibition Act nor the regulations issued pursuant to section 4, 27 USCA, are violative of the First Amendment. The intent of the Congress is obvious in section 12, 27 USCA, page 25, that the provisions of the act shall be liberally construed, to the end that intoxicating liquor as a beverage may be prevented. United States v. Windham (D. C.) 264 F. 376; Corneli v. Moore, 257 U. S. 491, 42 S. Ct. 176, 66 L. Ed. 332; Ma-King v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046.

▮ The court's jurisdiction is limited. It has neither inherent nor conferred power to regulate departmental activities, except as expressed by the Congress, and this power under the National Prohibition Act is limited to a review as provided by sections 14, 16, and 21, 27 USCA, as a court of equity, where the right to a permit is in issue. Hoell v. Mellon (D. C.) 4 F.(2d) 859; Blair v. Stewart, 56 App. D. C. 303, 12 F.(2d) 838; Vollmer Beverage Co. v. Blair (D. C.) 2 F.(2d) 469. See, also, Ma-King v. Blair, supra.

▮ The complaint alleges that the 18 gallons of wine in issue is the property of the Herzl Congregation, of which it is wrongfully deprived. If the Herzl Congregation is the owner, and possession belongs to it, it is the proper party to bring the action. Blackstone taught: "There is no wrong without a remedy." Law or equity must remedy a wrong unfolded before it. The law blossoms upon the soil of wrong, but, if the law is barren, equity must unfold into the fruitage of right. The right of the plaintiff, or the Herzl Congregation, is legal; the legal remedy is adequate. The National Prohibition Act be-

974

ing constitutional, the regulations having the force of law, no review with relation to issuance or cancellation of a permit being sought, no cause of action in equity is stated, and, it not appearing that demand has been made for the return of the wine in issue, no action at law is stated, and it would be futile to transfer the action to the law side of the court (Equity Rule 22) and have essential alteration in the pleadings made.

The motion to dismiss is granted.