## In re HERTER.

District Court, D. Montana. February 14, 1929.

No. 4374.

. Lester H. Loble, Hugh R. Adair, and Wilbur Eaton, all of Helena, Mont., for petitioner.

W. D. Rankin, U. S. Atty., of Helena, Mont., for the United States.

BOURQUIN, District Judge. Fortified by a quasi grant to run a distillery [Herter v. U. S. (C. C. A.) 27 F.(2d) 521], petitioner demands vindication of his brewery in the same premises.

Seeking return of certain articles seized by prohibition agents from his dwelling, his verified petition includes the search warrant and the affidavits upon which it is based, and the matter is submitted upon them. Therein he alleges that Agent Adams twice was in the dwelling on petitioner's invitation, inspired by Adams' untrue representations he was a lawyer seeking a missing heir, named Herter; that, to Adams' inquiry where he could procure a glass of beer, petitioner answered he did not know; that, to Adams' request that for him petitioner obtain several bottles of beer, he answered he could not; that, before Adams' return the next day, petitioner's inquiries discovered Adams' strategy; that petitioner sold no beer to Adams, nor to an unnamed taxi driver in the agents' affidavits mentioned, and "no intoxicating liquor is unlawfully sold" in said dwelling; that the search warrant fails to charge any such sale, save as a conclusion unsupported by facts; that the steins seized were in petitioner's possession at the time of the search of the case above cited; and that his demand for return of the articles was refused.

Adams' affidavit alleges the premises are by petitioner used as a dwelling, and as a place to possess, sell, and dispose of intoxicating liquor, the reputation of both conforming thereto; that, Adams visiting the premises, petitioner procured two bottles of beer from the cellar and served them in steins in the kitchen; that petitioner then refused to sell beer, but, to Adams' request for bot-

tles of beer to carry away, petitioner merely responded, "Come back" the following afternoon.

Dibble's affidavit alleges that, to buy intoxicating liquor, he visited the premises with an unnamed taxi driver, who told affiant that petitioner would not sell to or in the presence of a stranger; that accordingly he stationed himself near, observed, but could not hear, conversation between the driver and petititoner at the back door of the dwelling, but on the driver's departure heard petitioner say he was sorry he then had nothing for the driver's party, but expected to have some to-morrow, if the driver would come for it; that the driver informed Dibble that petitioner had no beer, would have the next day, and that the driver would take Dibble to the premises the next day to procure it.

Myers' affidavit is based on the others, and alleges that by reason thereof he has probable cause to believe intoxicating liquor for beverage purposes is manufactured, possessed, and sold in said premises.

The search warrant is in usual form, and the return thereon is of articles commonly "used for the manufacture, sale, and possession of intoxicating liquor," viz. one bottle capper, one box of caps, three stone crocks, one copper boiler, two copper buckets, one syphon hose, nine beer steins, thirty-five gallons of malt syrup, four hundred and fifty-six quarts of beer, three quarts of wine, and four ounces of whisky.

In view of the premises, and in the light of the elementary rules of evidence, it seems clear, if not practically admitted, that at the times involved petitioner was manufacturing, possessing, and selling beer for beverage purposes, in the dwelling aforesaid. The farthest he ventures in refutation of the agents' averments and reasonable inferences is to declare that "no intoxicating liquor is *unlawfully* sold therein."

That the agents and commissioner had probable cause to believe the said crimes were being committed in the dwelling also seems clear. The probable cause which justifies a paper warrant is no more than that which justifies seizure without a paper warrant, viz. "less than evidence which would justify condemnation. * * * It imports a seizure made under circumstances which warrant suspicion." Locke v. U. S., 7 Cranch, 348 (3 L. Ed. 364); The Thompson, 3 Wall. 162, 18 L. Ed. 55. "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient. * * * The substance of all the definitions is a reasonable ground for belief of guilt." Carroll's Case, 267 U. S. 161, 45 S. Ct. 288, 69 L. Ed. 543, 39 A. L. R. 790

The case last cited, whatever may be said of others, adheres to principle that, in construction of Constitution and statutes, old John Barleycorn is entitled to no more consideration than other rascals. Were the instant case one of making, possessing, and passing counterfeit money, the validity of the search warrant would hardly be questioned, much less overthrown. Be that as it may, the seizure is none the less valid. These prohibition agents are ever clothed with the duty and power of revenue officers. See Cola's Case (D. C.) 17 F.(2d) 830.

Although especially enforcing the prohibition law, at the same time they are enforcing the revenue laws, are "acting under the authority of the revenue laws," and are vested with their "power and protection." Maryland v. Soper, 270 U. S. 31, 46 S. Ct. 185, 70 L. Ed. 449. The revenue laws impose taxes upon petitioner and his brewery, its product, and his sales. See sections 202, 205d, 206, 504, 506, title 26, USCA.

Likewise they impose duties and confer power upon the officers without paper warrants to enter "any building or place where any articles or objects subject to tax are made, produced, or kept," to examine them, to assess, tax, collect, and to invoke the statutory forfeitures of articles and instrumentalities of production, evading taxation. See sections 92, 193, 509, 525, Id.

Nothing in these statutes excepts a distillery or a brewery, camouflaged as a dwelling, or a brewer therein, and exception should not be implied merely "to protect the home" (brew?)—to adopt the pathetic phrase of some appellate courts.

But it is argued that these revenue statutes are repealed by the prohibition laws, and that manufacture and possession of intoxicating liquors in the home are not unlawful; that is to say, in substance and effect, that a still for family enjoyment may be set in the window as a parlor ornament and operated before the public with immunity from official interference. That the argument presently has considerable support in the courts must be conceded. If justified, the Eighteenth Amendment and the Volstead Act (27 USCA) are the deadliest blows ever delivered to the cause of prohibition; for, whereas, before them the manufactories of intoxicants were some thousands down town, now they are some millions in the homes. Before, adults alone in the business; since, the children watch the still or home brew,

while mother does the housework, father peddles the product, and all drink of it.

But it is not justified. Although at first the courts were disposed to hold that the revenue laws were in the main repealed by the Volstead Act, Congress applied a sharp corrective in the Willis-Campbell Act (42 Stat. 227). See Maryland v. Soper, 270 U. S. 31, 46 S. Ct. 185, 70 L. Ed. 449. These revenue laws heretofore cited in their provisions define distillers and brewers, impose taxes and procedure for examination, assessment, collection, seizures, and forfeitures, and are expressly continued by section 35 of title 2 of the Volstead Act and section 5 of the Willis-Campbell Act (sections 52, 53, title 27, USCA). The Volstead Act shall relieve from no taxes or forfeitures, declares the first, and the procedure shall be the same as before, declares the second. Moreover, the restrictions upon search warrants are consistent with the revenue statutes, for that the officers enforcing the latter require no search warrant in respect to matters of taxation and forfeiture.

Whoever engages in the production or sale of taxable articles impliedly agrees, contracts with Society, that the officers may freely enter to examine, tax, collect, seize, forfeit. See U. S. v. Apple (D. C.) 1 F.(2d) 494. The Eighteenth Amendment illegalizes the manufacture of intoxicating liquor for beverage purposes, and where? Outside the home only? No. "Within * * * the United States," everywhere. A still anywhere but in an authorized distillery is unlawful. Maryland v. Soper, 270 U. S. 31, 46 S. Ct. 185, 70 L. Ed. 449. Brewing in any place contrary to law is in no better case. Their illegal operations are not legalized by the home.

So of possession of liquors. Volstead Act, § 3 (section 12, tit. 27, USCA), provides it shall be unlawful to possess intoxicating liquor, except as in the act authorized, and nowhere does the act authorize possession of such liquor for beverage purposes, in the home or anywhere, if acquired subsequent to the act. Wherein section 33 of the act (section 50, tit. 27, USCA) declares it shall not be unlawful to possess such liquors in the home if for personal use, it is clear it refers to liquors acquired before the act, and which "need not be reported" to the Commissioner, as all other liquors then owned were required by said section to be. See Street's Case, 254 U. S. 91, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548; Corneli's Case, 257 U. S. 496, 42 S. Ct. 176, 66 L. Ed. 332.

It is true that in U. S. v. Berkeness, 275 U. S. 155, 48 S. Ct. 48, 72 L. Ed. 211, it is stated that "mere possession of liquor in one's home" is not unlawful, but it does not appear the liquor involved was post-Volstead, there manufactured, taxes unpaid, for beverage purposes, or in fact unlawful. Otherwise the court overlooked the clear distinction of section 33, and went very far indeed towards branding the Volstead Act as a farce, tragedy and towards destruction of the purpose of the Eighteenth Amendment.

It would be primitive doctrine and strange construction of Constitution and act to hold that, however unlawfully the liquor is manufactured, possessed, sold, transported to the home, once within the latter it is sacrosanct, in sanctuary, safe on the horns of the altar, and would go far to demonstrate that intoxicating liquors are indeed favored over and above all other things criminal.

Moreover, the officers had knowledge of crimes in commission in the premises, and it was their duty and right, without a paper warrant, to enter and prevent. Neither Constitution nor statutes have repealed this inherent duty and power; it has never been denied, and is exercised every day in respect to other offenses at least.

Adams' strategy, by which he gained entrance and discovered the illicit operations, may arouse great indignation in the bootlegger and others, who prate of "social values," "human equations," etc., in his defense; but it has the sanction of common sense, as well as law, which is not always the same thing.

When, in his warfare upon Society, the criminal discards secrecy, strategy, and falsehood, and resorts to only open attack, will be time enough for the righteous to give heed to his weeping over the "unfair tactics of the officers in playing the game." To whatever extent there is conflict in statements or inferences in the affidavits, those of the agents are credited, despite the country-wide, persistent, and vicious wet propaganda adverse to them. That it has effect is notorious in public opinion, speech, and press, in criticism, abuse, denunciation, slander, libel, and attack, in the rant of the criminal lawyer, indefensible verdicts, and judgments to make angels weep. Although the trial court determines the competency of evidence, and the credibility of witnesses, to that point, although the general rule is that its judgment prevails on appeal, in liquor cases it seems otherwise—the agents' testimony is "unfounded in reason"; the bootlegger's true. See Herter's Case (C. C. A.) 27 F.(2d) 521.

Surely bravado, bluff, and chance-taking

are not unknown to criminals. Even admissions and confessions are sometimes made. Marsh's Case (C. C. A.) 29 F.(2d) 173, adheres to the general rule aforesaid, but in acceptance of the officers' testimony admonishes "caution * * * for * * * the protection of defendants," bootleggers as usual. And see Byars Case, 273 U. S. 32, 47 S. Ct. 248, 71 L. Ed. 520, which is likewise in the latter particular.

Some noteworthy day some appellate court will achieve fame and promote the administration of justice by proclaiming that not only bootleggers, but Society, too, has constitutional rights, and is equally entitled to fair trials; that the Constitution is no less to convict the guilty than to acquit the innocent; that it may be as well to "be vigilant to scrutinize" bootleggers' testimony, in order to protect Society, as to likewise scan officers' testimony, in order to protect bootleggers; and that Constitution and Volstead Act are to enforce prohibition, rather than to defeat it. Did appellate courts assume that impartial attitude, some of their members need less bewail (dehors the record) that this is the most criminal of all countries, and trial courts would be less motivated by unholy fears of reversal.

And it is unfortunate indeed that public respect for and confidence in judicial construction of the Constitution should be impaired by the circumstance that so often it inures to the benefit and immunity of the bootlegger, to the jubilation and triumph of old John Barleycorn.

Petitioner's liquors and instrumentalities clearly unlawful and forfeitable, he cannot recover by virtue of title, and the seizure valid, not by virtue of possession.

Petition denied.