JOHN WISCHHUSEN *v.* AMERICAN MEDICINAL SPIRITS COMPANY, INC.

[No. 51, October Term, 1932.]

*Decided January 11th, 1933.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Wirt A. Duvall, Jr.,* and *August A. Denhard,* for the appellant.

*Raphael Walter,* with whom were *Sykes, Nyburg, Goldman & Walter* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The plaintiff sued the defendant on the common counts and on a seventh special count in contract, which alleged that, on August 13th, 1929, the plaintiff, an expert in the manufacture of whisky, was employed by the defendant, a corporation engaged in the business of distilling whisky, for the period of one year, at a salary of $100 a week, to have the exclusive management and control of all operations at a particular distillery in the production of whisky by the defendant until the whisky was delivered to the cistern room, and meanwhile neither party was to engage in any violation of any law; that on August 22nd, 1929, the plaintiff began his duties under the contract and continued uninterruptedly in the service of the defendant, and was regularly paid the weekly sum of $100, until September 12th, 1929, when, without cause, the defendant dismissed the plaintiff from said service and thereafter refused to permit him to perform the contract, although the plaintiff was ever ready and willing so to perform.

The defense to this action on the contract was set up in two amended pleas to the seventh count of the declaration. A demurrer was interposed to these pleas, and the demurrer was overruled, and, on a refusal of the plaintiff to plead further, a judgment was entered in favor of the defendant, and this appeal taken.

The pleas are in the form of a confession and avoidance, and differ only in unessential particulars, and each presents the same defense. The contract is admitted, but the plea alleges these facts in avoidance of that admission: The defendant was a distiller of intoxicants, and its business was unlawful except when engaged in distilling for one of the few permitted purposes and then under the express authorization and supervision of the government of the United States. The distillation could not proceed until the distiller had filed a prescribed application for the issuance of a permit to distill and a governmental permit had been granted in accordance with the federal statutes and regulations on the subject. The defendant had filed its application in the form

required, but the permit had not been issued at the time the contract of employment was made by the plaintiff and defendant. The plaintiff knew these recited facts to be true when the parties agreed on August 13th, 1929. The government notified the defendant, on September 11th, 1929, that it had learned that the plaintiff was employed by the defendant in the capacity of a distiller, and that plaintiff was "unsatisfactory to the Government for the reason it is believed he is not trustworthy or competent," and therefore the application of the defendant for permission to distill could not be approved unless the position held by the plaintiff was "filled by one who is entitled to the full confidence of the Government." On the receipt of this notice, the defendant informed the plaintiff of the situation, paid him in full to the date of discharge, and declared the contract between them terminated because of the impossibility of further performance by the plaintiff.

The promise of the plaintiff was to render, at a specified place, during the whole period of the contract, personal service in a special art in which he was proficient. The service, however, was in connection with the production of an article which could not be manufactured except by the express permission of the government of the United States under prescribed statutory conditions and authorized regulations. The difficulty of confining the manufactured product to its limited lawful use, and the comparative ease and great gain in its illicit diversion, made it necessary for the government to determine who could engage in the business and to prevent the employment of undesirable workmen of whatever grade. So the federal statute made it an imperative condition precedent to the manufacture of whisky that a permit be granted, whose issuance was in the reasonable discretion of the Commissioner of Internal Revenue. The Commissioner was empowered to prescribe the form of the applications for permits and the facts to be set forth, and his action in refusing to grant a permit to the applicant was subject to review. *McCormick & Co. v. Brown*, 286 U. S. 131, 145, 52 S. Ct. 522, 76 L. Ed. 1017, 1026; U. S. Code Ann., title 27, secs. 5, 12,

13, 14, 16, 46, 72, 83, 85 (note, the Prohibition Reorganization Act of 1930 was not in force when the questions on this record arose, 27 U. S. Code Ann., sec. 101 *et seq.*) ; *Corneli v. Moore* (D. C.), 268 Fed. 993; *Id.,* 257 U. S. 491, 42 S. Ct. 176, 66 L. Ed. 332; *Ma-King Products Co. v. Blair,* 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046, affirming (C. C. A.) 3 Fed. 936; *Guerich v. Rutter,* 265 U. S. 388, 44 S. Ct. 532, 68 L. Ed. 1068; *Chicago Grain Products Co. v. Blair* (D. C.), 12 Fed. (2nd) 90; *Nat. Grain Yeast Corp. v. Mitchell* (C. C. A.), 51 Fed. (2nd) 500; *Mt. Morris Distributing Corp. v. Doran* (D. C.), 36 Fed. (2nd) 489; *Bernstein v. Doran* (C. C. A.), 33 Fed. (2nd) 897; *Quitt v. Stone* (C. C. A.), 46 Fed. (2nd) 405; *Id.,* 283 U. S. 839, 51 S. Ct. 487, 75 L. Ed. 1450; *Herrman v. Lyle* (D. C.), 41 Fed. (2nd) 759; *De Luca v. Stone* (D. C.), 45 Fed. (2nd), 846; *California Wine Ass'n v. Doran* (D. C.), 28 Fed. (2nd) 80.

As was said in *Ma-King Products Co. v. Blair,* 271 U. S. 479, 46 S. Ct. 544, 545, 70 L. Ed. 1046: "It is clear that the Act does not impose on the Commissioner the mere ministerial duty of issuing a permit to any one making an application on the prescribed form, but, on the contrary, places upon him, as the administrative officer directly charged with the enforcement of the law, a responsibility in the manner of granting the privilege of dealing in liquor for nonbeverage purposes, which requires him to refuse a permit to one who is not a suitable person to be entrusted, in a relation of such confidence, with the possession of liquor susceptible of diversion to beverage uses."

So, if the owner of a distillery submitted an application for a permit to manufacture whisky, and the government was advised and concluded that one of the employees, who was to perform an important service in an executive position, is neither competent nor trustworthy, the Commissioner or his representative, in the exercise of a reasonable discretion, might decline to issue the permit unless such employee was discharged. In the absence of any averment on the pleading that such action of the representative of the government was arbitrary or capricious, the court will assume

that the action was lawful and in the proper exercise of a sound discretion. *Ma-King Products Co. v. Blair,* 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; *Shamokin Beverage & Ice Co. v. Wynne* (D. C.), 41 Fed. (2nd) 791; *Unger v. Campbell* (D. C.), 43 Fed. (2nd) 461; *Triborough Chem. Corp. v. Doran* (D. C.), 39 Fed. (2nd) 479; *Ginsberg v. Yellowley* (D. C.), 290 Fed. 262; *Schnitzler v. Yellowley* (D. C.), 290 Fed. 849; *O'Sullivan v. Potter* (D. C.), 290 Fed. 844; *Hardware Dealers' Ins. Co. v. Glidden Co.,* 284 U. S. 151, 160, 52 S. Ct. 69, 76 L. Ed. 214, 220; *Hanon v. State,* 63 Md. 123, 129; *Nofire v. United States,* 164 U. S. 657, 17 S. Ct. 212, 41 L. Ed. 588; *Schell v. Fauche,* 138 U. S. 562, 11 S. Ct. 376, 34 L. Ed. 1040.

The effect of the government's official notice was that the defendant could not obtain a permit lawfully to manufacture whisky so long as the plaintiff was in its service at the plant, but the contract to pay the plaintiff the weekly wage throughout a year was in consideration of the daily performance by the plaintiff of his service as distiller in charge. The service, which took time, must first be performed before the weekly payment of money, which could practically be instantaneous, need be made. If the plaintiff should not continue to perform this service, week by week, during the remaining period of his contract, there would be a total failure of consideration for that period. Since a permit to manufacture whisky would not be issued, the defendant could not lawfully operate its plant, and there would be no service within the terms of the contract for the plaintiff to render, because it will not be gratuitously assumed that the contracting parties contemplated the illicit manufacture of whisky. The stipulations of the contract must therefore be construed to have implicit reference to a continuing lawful manufacture that would require a grant by the federal government of a permit to manufacture whisky. The refusal of the necessary permit was therefore a subsequent, unanticipated, circumstance, in connection with which the contract must be construed and the relative rights of the parties ascertained.

The defendant rescinded the contract with the plaintiff, after it had been informed that the permit would not be given unless another employee was substituted in the place of the plaintiff. The inhibition put upon the service of the plaintiff by the government was not occasioned by any act of omission or commission of the defendant's, but was caused by such conduct of the plaintiff himself that the government found him an improper person to be connected with the manufacture of whisky. The fact that the plaintiff could not perform the promised service was determined before the defendant rescinded the contract. The breach of the contract was divulged when the plaintiff was declared by the government not to possess those qualities of skill and character which would qualify him to perform the special service, which he had impliedly represented himself to possess when the contract with the defendant was formed. *Williston on Contracts,* secs. 1014, 1020, p. 1922; *Wood on Master and Servant* (2nd Ed.), sec. 116; *Balto. Base Ball Club v. Pickett,* 78 Md. 375, 385, 28 A. 279. The default of the plaintiff in fulfilling the representations of his undertaking not only was a breach of contract, but it made it impossible for the defendant lawfully to accept the promised performance. It would seem that a sufficient defense to the plaintiff's demand is that no person shall call upon another to perform his part of the contract until he himself has performed or is ready and willing to perform all that he has stipulated to do as the consideration of the other's promise. *Kingston v. Preston,* Doug. 689; *Glazbrook v. Woodrow,* 8 T. R. 366, 374. See *Grabenhorst v. Nicodemus,* 42 Md. 236, 247, 248. While the plaintiff may have been willing to perform the agreed service as distiller, he was neither able nor ready. In its contractual sense a promisor is not ready, if he is not able to perform. On the facts admitted by the demurrer, the action of the federal authority not only prevented him from lawfully rendering the service agreed, but also forbade his master from carrying on its business if the plaintiff were in its employ. It follows that the plaintiff was not ready and able to fulfill his promise as contemplated by the

contract of the parties, and that the defendant's recission of the contract was the consequence of the default of the plaintiff. *Williston on Contracts,* sec. 1305.

Apart from the right to rescind the contract because of the breach by the plaintiff, there is another reason to sustain the judgment on demurrer, in that the performance of the contract became legally impossible.

The general rule with respect to contracts is generally stated to be that, when the impossibility of performance arises after the formation of the contract, the failure of the promisor to perform is not excused, whether such impossibility was absolute or relative, or whether owing to the fault of the promisor or not, upon the theory that, if the promisor makes his promise unconditionally, he takes the risk of being held liable even though performance should become impossible by circumstances beyond his control. *Benson v. Atwood,* 13 Md. 20, 52, 53; *Kribs v. Jones,* 44 Md. 396, 409; *Pennsylvania R. Co. v. Reichert,* 58 Md. 261, 274; *Southern Bldg. & Loan Assn. v. Price,* 88 Md. 155, 163, 164, 41 A. 53; *Cowan, Inc., v. Meyer,* 125 Md. 450, 466, 467, 94 A. 18; *Standard Scale etc. Co. v. Balto. Enamel etc. Co.,* 136 Md. 278, 283, 110 A. 486. The unfair consequences of this rule resulted in exceptions when the impossibility arises (1) either from a change in domestic law or by an executive or administrative order; (2) or when the thing, whose continued existence is essential to the performance of the contract, is destroyed without fault of either party to the contract; (3) or the contract is for the personal services of the promisor who, without his own default, becomes physicially incapacitated or dies. *Stewart v. McIntosh,* 4 H. & J. 233; *American Towing etc. Co. v. Coal Co.,* 117 Md. 660, 677-680, 84 A. 182; *Furness, Withy & Co. v. Randall,* 124 Md. 101, 108, 91 A. 797; 3 *Williston on Contracts,* secs. 1931, 1935, 1938.

If a contract is legal when made, and no fault on the part of the promisor exists, the promisor has no liability for failing to perform the promised act, after the law itself subsequently forbids or prevents the performance of the promise.

*Supra.* The principle is recognized in *Standard Brewing Co., v. Weil,* 129 Md. 487, 490, 99 A. 661, but not applied, because the failure to obtain a license to conduct a saloon on the demised premises, whose use, it was covenanted, would be solely for the purposes of a saloon and restaurant properly conducted in conformity with law, was not a constructive eviction, because not complete, as the premises could be used for restaurant purposes. The facts of this record are different. The plant of the master may not be lawfully operated to manufacture whisky without a permit from the federal government. Should the master or his servant make whisky without a permit, each would violate the law. The servant's whole service was confined to the manufacture of whisky. Under such circumstances, the performance of the contract would be criminal, and so legally impossible, by reason of the refusal of constituted authority to grant the requested permit to manufacture. *Supra; Anglo-Russian Merchant Traders v. Batt* (1917), 2 K. B. 679; *Wood on Master and Servant,* 520.

The present law on the subject is formulated in the Restatement of Law of Contracts by the American Law Institute, vol. II, p. 852, sec. 458, "Supervening Prohibition or Prevention by Law": "A contractual duty or a duty to make compensation is discharged in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited (a) by the Constitution or a statute of the United States, or of any one of the United States whose law determines the validity and effect of the contract, or by a municipal regulation enacted with constitutional or statutory authority of such a State, or (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States."

The application of this rule to the facts on this record obviously indicates an affirmance.

*Judgment affirmed, with costs to the appellee.*